5770. CITIZENS BANK OF TIFTON v. WILLIS et al.

1. The circumstances in evidence were sufficient to authorize the jury to infer that the bank ratified the cashier's acceptance of certain notes and collateral in lieu of the note sued on, and in full accord and satisfaction thereof, and to rebut the presumption raised by the plaintiff's retention of the original note. The case is controlled by the ruling of the Supreme Court in Hamilton v. Stewart, 105 Ga. 302 (31 S. E. 184), and cases there cited.

2. While it is true that "a bill, acceptance, or promissory note, either of the debtor or of a third person, is no payment or extinguishment of the original demand, unless it is expressly agreed to receive it as payment" (Weaver v. Nixon, 69 Ga. 699), still, where the holder of a promissory note takes possession of new promissory notes for the same amount, with collateral notes and a mortgage delivered to it for the express purpose of securing the new notes and for no other purpose, and thereafter records the mortgage and proceeds to collect the collateral notes, the inference that there was complete accord and satisfaction is authorized.

3. Though the cashier of the bank may have had no authority to accept the new notes in accord and satisfaction of the note which is the basis

of the suit, and such authority was confined to the directors, still the directors are charged with knowledge of the conduct of the bank's business; and from the lapse of time, the nature of the transaction, and the use of the collateral, it is to be presumed that the act of the cashier, even though originally unauthorized, was ratified by the bank, and the bank was thereby estopped to assert the original lack of authority on the part of the cashier.

DECIDED FEBRUARY 6, 1915.

Complaint; from city court of Tifton—Judge R. Eve. May 16, 1914.

*Fulwood & Skeen,* for plaintiff.

*J. S. Ridgdill, R. D. Smith,* for defendants.

RUSSELL, C. J. The Citizens Bank of Tifton brought suit against W. H. Willis and others as securities on a note dated October 20, 1909, and due January 20, 1910, given it by the Farmers Supply Company, which had failed and ceased to do business. The defendants admitted the execution of the note, but filed a plea of accord and satisfaction. The plea set up that on January 11, 1910, one of the defendants, who was also president of the Farmers Supply Company, delivered to W. L. Yeomans, cashier of the plaintiff bank, in lieu of the $3,000 note sued and another note for $2,000, two notes for $2,500 each, executed by the Farmers Supply Company to the bank and secured by a mortgage or deed to certain realty owned by the Farmers Supply Company, and notes of customers of that company, for approximately $6,000, "which were expressly accepted in lieu of the note sued upon and in lieu of the personal security of the accommodation endorsement of said defendants, and in full accord and satisfaction and extinguishment of said note sued upon." The plea further alleged that after so accepting the last-mentioned notes in lieu of the note sued upon, the bank "caused the deed or mortgage given as security therefor to be recorded in the clerk's office, later hypothecated and used said notes as collateral without the State, and finally  .   . proved said two $2,500 notes in bankruptcy as a then-existing claim against said Farmers Supply Company, and later collected thereon substantial payments in dividends from the bankrupt court." The defendants denied ever having made any payments on the note as shown by the credits. By amendment the defendants amplified their original plea and alleged an agreement on the part of the cashier of the bank to surrender the note sued upon, and alleged that he had failed and neglected to keep his promise.

On the trial Frank Scarboro, one of the defendants, testified as follows: The Citizens Bank held two notes of the Farmers Supply Company, aggregating $5,000, one of which is the note sued upon. I was president of the Farmers Supply Company. I was anxious to adjust and get rid of the two notes, and proposed to Mr. Yeomans, who was cashier of the plaintiff bank, to give him two notes of the Farmers Supply Company, for $2,500 each, together with a third mortgage on the building of the Farmers Supply Company. Yeomans took the two new notes and the mortgage, but said that he would have to see Mr. Buck, who was president of the bank, or the directors, before he could accept them. Later he told me that Mr. Buck would not agree to the arrangement unless I would put up more collateral. I then gave him a number of collateral notes, amounting to about $6,000, in an effort to satisfy him, and thought I had done so. Mr. Yeomans told me that he had seen Mr. Buck in regard to the matter, and that it was all right. I do not know why I did not get the old notes. I was trying all the while to satisfy the bank, and I did not know why the notes, when satisfied, were not delivered up. I did not get the notes at that time. Mr. Yeomans stated that he would either mail them to me or hand them to me. I was a business man and knew that when an obligation was satisfied it was usual to surrender it. All the defendant endorsers were directors of the Farmers Supply Company. W. H. Willis, C. L. Parker, and W. E. Farmer, defendants, each testified that they had been told by Yeomans, cashier, that the note sued on had been satisfactorily arranged, and that their liability was at an end.

W. L. Yeomans testified for the plaintiff as follows: I was cashier of the plaintiff bank, which at the time held two notes of the Farmers Supply Company, one for $3,000 and the other for $2,000, endorsed by persons connected as directors with the Farmers Supply Company, and one of which is sued on here. Frank Scarboro, who had charge of the supply company, came to the bank and proposed to take up the two notes by giving two other notes, of $2,500 each, of the Farmers Supply Company, and a third mortgage upon its buildings. I told him I could not take them myself, but would submit them to Mr. Buck, the president, and the board of directors. I did this, but Mr. Buck declined to accept them unless they would put up more collateral. I had some idea

things were in bad shape with the Farmers Supply Company. I reported to Frank Scarboro that we could not accept the notes and mortgage unless he would satisfy us with more collateral. He then gave us a batch of notes which the Farmers Supply Company held against various farmers, amounting to about $6,000, but never did furnish us enough to satisfy us, and we did not surrender the old notes, the one sued on. I never considered it satisfied, because Scarboro never furnished us with enough collateral to satisfy us. It is true that the two notes for $2,500 each, and the mortgage, were left at the bank, and it is also true that the mortgage was either by me or the Farmers Supply Company put on record, and it is also true that I charged out on the books of the bank the notes sued on, but on Scarboro's failure to furnish us with sufficient collateral to satisfy us, I re-entered it on the books of the bank. I sent one of the new notes left by Scarboro with me to a bank in Baltimore or Philadelphia for discount, but wired for its return. I have never discussed the matter with W. H. Willis, but did state to C. L. Parker that the matter had been arranged. As a matter of fact, however, it had not. The $6,000 collateral notes were placed with the plaintiff bank for the purpose of securing the two notes of $2,500 each that the Farmers Supply Company had offered in satisfaction of the notes sued on, and for no other purpose. It is true that as a representative of the bank and as its cashier, I entered into an agreement with Judge Eve, trustee in bankruptcy for the Farmers Supply Company, by which we agreed upon a valuation of $2,000 for these notes. I had right and authority to act for the bank in this respect. Under the general rules of the bank I was limited in authority to make loans of $100 or less, but as a matter of practice I had general charge of the bank, because of the fact that the directors met very seldom. It was my practice to submit all matters amounting to more than $100 to Mr. Buck, the president. E. A. Buck testified for the plaintiff as follows: I am president of the plaintiff bank. Mr. Yeomans, the cashier, had no authority beyond transactions up to $100. Yeomans came to me with the proposition of Scarboro to give two notes of $2,500 each and a mortgage of some kind. I told Yeomans not to settle the old notes that way, but go back to Scarboro and get more collateral. I knew that the Farmers Supply Company was in bad shape, and that the notes already held as endorsed were good. I wanted to

get all the collateral I could. Scarboro never furnished enough to satisfy us .in surrendering what we had.

The jury returned a verdict for the defendants. The plaintiff filed a motion for a new trial, upon the usual general grounds and upon the ground that the evidence demanded a verdict for the plaintiff. To the judgment overruling this motion the bank excepted.

1. We are of the opinion that the circumstances in evidence were sufficient to authorize the jury to infer that the bank ratified the cashier's acceptance of certain notes and collateral in lieu of the note sued on, and in full accord and satisfaction thereof, and to rebut the presumption raised by the plaintiff's retention of the original notes. As was said in *Hamilton* v. *Stewart*, 105 *Ga.* 302 (31 S. E. 184), "While, of course, a party can not be bound by a settlement unless he assents to its terms, still this assent may be implied from the circumstances, and conduct inconsistent with a refusal would raise a presumption of assent, upon which the other party would have a right to act. Nothing could be clearer than the proposition that where one person delivers to another property, to be retained upon a condition stated, the party receiving it can not retain the property and repudiate the condition." Certainly it can not be doubted that it was the intention of the defendants, when they delivered the new notes to the plaintiff, that these notes should be received in settlement of the original notes, and especially when they later delivered to the plaintiff further collateral, which was also accepted and was retained for more than two years. Indeed, the cashier of the bank testified that the notes and collateral were delivered to the bank solely for the purpose of extinguishing the original notes. The note sued on had been past due for more than two years, and, according to the evidence, no demand had ever been made for payment prior to the filing of the suit. After the bank had for so long a period retained the old notes and had performed acts of ownership and control over the new notes, which, according to its cashier's evidence, "were offered in satisfaction of the note sued on and for no other purpose," and its governing body had acquiesced in the cashier's acceptance of the new notes and the collateral, and made no attempt to repudiate the cashier's acceptance and retention, or to notify the defendants that the notes and securities were not being held in accord and satisfaction of the orig-

inal note, as they certainly had a right to believe, the bank could not successfully assert that the notes were received and held for any other purpose than in accord and satisfaction of the original notes. Where one, having the right to accept or reject a transaction, takes and retains benefits thereunder, he becomes bound by the transaction, and can not avoid its obligation or effect by taking a position inconsistent therewith. 16 Cyc. 787. The jury had the right, from the facts and circumstances in evidence, to believe that the credits on the note sued upon, which were made subsequent to the attempt of the defendants to satisfy the note, and which they denied having made, were amounts collected from the collateral left with the bank as security for the notes last given (Civil Code, § 5743) ; and this being. true, the bank was not in a position to reject the transaction. The directors were charged with knowledge of the bank's affairs, and certainly could not, after a lapse of more than two years, and after having received benefits from the transaction, take advantage of the non-authority of its agents to enter into an agreement in which they had acquiesced wholly and without any evidence of attempted refutation.

2, 3. One of the defendants testified that the cashier told him that he had seen Mr. Buck, the bank's president, in regard to the matter, after the delivery of the second collateral, and that "it was all right." From this, then, the jury were authorized to believe that the cashier, acting as agent for the bank, expressly agreed to receive the notes and collateral as furnished by the supply company, in accord and satisfaction of the note sued on. Conceding, then, that Yeomans, the cashier, even though under his own testimony he "had general charge of the bank," was not authorized to agree to the acceptance of the settlement thus offered, still, as said above, by the adoption of Yeomans's acts as their acts, through failure to object thereto after his acts came to their knowledge (and they were charged with knowledge), they were bound by this express agreement on his part. Having accepted the valuable collateral which was delivered to them for a certain purpose, to wit, in satisfaction of the note sued on "and for no other purpose," and having collected a portion thereof (as the jury were authorized to believe they had), they thus became bound by all the acts and agreements of the cashier in and about the transaction, and were estopped to assert the original lack of authority on his part, or to adopt a part of his acts and refute others.

No errors of law are alleged. The facts were sufficient to authorize the verdict rendered, and we are not in a position to say that it was erroneous.

*Judgment affirmed. Broyles, J., not presiding.*