### 52890. SMITH v. HORNBUCKLE.

MARSHALL, Judge.

Appellant Smith brings this appeal from a verdict and judgment in favor of appellee Hornbuckle as to Counts 1 and 2 of Smith's complaint, and as to the inadequacy of the verdict and judgment as to Count 3 of his complaint. No error is asserted in relation to Count 4 of Smith's complaint, which was rendered in favor of Smith and against Hornbuckle.

The facts adduced by the parties to this litigation would reasonably allow the jury to conclude the following transaction between these parties. Smith was the proprietor of a business known as South Georgia Brokers. His business was to furnish farmers in the area with supplies for boxing and shipping growing tomato plants. Smith had done business with Hornbuckle for about 30 years, with the volume of business ranging from

approximately $10,000 to $50,000 each year. Over the years Smith had carried Hornbuckle on his books as an open account. However, in 1967, Smith felt concern as to the amount of the indebtedness owed by Hornbuckle. In that year Smith obtained from Hornbuckle for the first time written promissory notes. By the end of the 1969 growing season, Smith had promissory notes executed by Hornbuckle amounting to $57,000. These notes were three of $11,000 and two of $12,000. Hornbuckle had paid $5,000 on the first $11,000 note, leaving an indebtedness of $52,000. Hornbuckle had also endorsed a trade acceptance in the amount of $2,615.65 over to Smith in an attempt to reduce the indebtedness.

In 1968 Smith and one Bill Camp entered into a partnership for a tomato business. It is not contested that this partnership ended in 1968; however, it further is not contested that Smith never communicated to his business associates such as Hornbuckle that the partnership had terminated. The partnership between Smith and Camp was known as D & B Enterprises. In 1968 Camp entered into an agreement with Hornbuckle to market Hornbuckle's potato crop. Before entering into the business arrangement with Camp, Hornbuckle apparently was led to believe that Smith would "stand behind" Camp's business dealings with Hornbuckle. Hornbuckle, by deposition, stated he understood that Smith would honor the agreement to stand behind Camp by crediting the value of potatoes shipped to Camp against the indebtedness owed by Hornbuckle to Smith. Hornbuckle's son also offered evidence that Smith stated to him that he (Smith) would credit the value of the potatoes shipped to Camp against the indebtedness owed by Hornbuckle to Smith. During the latter part of 1968 until April of 1969 Hornbuckle shipped $20,916.70 worth of potatoes to Camp. There was evidence indicating that Hornbuckle did not collect any money for the shipped potatoes. Camp died in November, 1969, and was not available as a witness at the trial of this case.

In December, 1969, Hornbuckle executed a note and security deed to Smith pledging certain property in Florida. The pledge only extended to a part of the Florida property rather than the whole estate. The note was for an

amount of $35,000 and was designed to reduce the debt owed by Hornbuckle to Smith up to that date and time. Smith discounted the $35,000 note. In exchange for this note, Smith returned to Hornbuckle the two $12,000 notes and one of the $11,000 notes. At about the same time, Hornbuckle executed an additional note in the amount of $4,283.63 as payment of the interest on the notes making up the original $57,000 indebtedness. During the next few years Smith and Hornbuckle continued to do business as usual but the indebtedness for each year was paid by Hornbuckle so that the only contested indebtedness was for the period from 1967 to 1969.

It was Hornbuckle's executrix's position (Hornbuckle having died after suit was filed but before the issue was tried) that after the $35,000 note was discounted that left outstanding the one full remaining $11,000 note, $6,000 remaining unpaid on the first $11,000 note plus the $4,283.63 note for interest. These notes totaled $21,283.63. It was contended that the $20,916.70 worth of potatoes extinguished all but $366.93 of the indebtedness. Appellee contended on the basis of this evidence that the note of $35,000 issued in December of 1969 together with the potatoes shipped to Camp during 1968 and 1969 amounted to an accord and satisfaction, effective in December, 1969.

Smith, on the other hand contended that he had never entered into an agreement with Hornbuckle to credit the value of the potatoes against the indebtedness. He contended that the potato debt was a matter between Hornbuckle and Camp. He admitted the $35,000 payment but sought payment of the remainder of the indebtedness. In Count 1 he sought $6,000 as the remaining amount of indebtedness on the first $11,000 note. Count 2 sought $11,000. Count 3 sought payment of the $4,283.63 interest note, and Count 4 sought $2,615.65 based upon the endorsement of the trade acceptance (which was never successfully collected). The jury found for Hornbuckle on the first two counts, found for Smith on Count 3 in the amount of $366.93, and for Smith in Count 4 in the amount of $2,615.65, based on the trade acceptance.

Smith enumerates six errors. The first deals with the failure of the trial court to direct a verdict for Smith as to

Counts 1, 2 and 3 because Hornbuckle did not establish the existence of an accord and satisfaction. The second enumeration complains that the evidence was insufficient to support the verdict and judgment. The last four enumerations are concerned with the alleged improper admission into evidence of four of Hornbuckle's exhibits. *Held:*

1. In his first enumeration of error appellant asserts the failure of proof to establish the existence of an accord and satisfaction. This argument is multipronged.

(a) Smith first argues that the evidence fails to show the existence of a new contract between himself and Hornbuckle. He argues that in the absence of a subsequent agreement in which all three parties (Camp, Smith and Hornbuckle) agreed to extinguish the prior notes and in the absence of the execution of such agreement so as to effect a payment of the entire indebtedness, there could be no accord and satisfaction. *Burgamy v. Holton,* 165 Ga. 384 (3) (141 SE 42). Inasmuch as Smith denied the existence of any such agreement under oath, he contends that there was a failure of proof. He argues that Hornbuckle never offered evidence as to the value of the potatoes shipped, or that Smith was the recipient of those potatoes, or that Smith agreed to accept the potatoes or sell them and apply the proceeds of the sale against the notes. In sum, Smith argues that if there was ever a contract, it was between Camp and Hornbuckle and no evidence was offered to show any legal benefit to Smith.

As we read the evidence, a question of fact was raised as to whether or not Smith and Hornbuckle entered into a contract to satisfy Hornbuckle's debt by the acceptance of potatoes. Even though Smith denied such an agreement, there was affirmative evidence of such an agreement. Smith was contradicted by several witnesses as to other such agreements, all of which Smith denied. This raised credibility questions properly to be resolved by the jury. There was evidence offered, which if believed by the jury established that $20,916.70 worth of potatoes were shipped to Camp in a business enterprise in which Camp and Smith appeared to be jointly engaged. Other evidence showed an agreement to credit this to Hornbuckle's

outstanding indebtedness to Smith. Additionally, there was competent and credible evidence that in December, 1969, Smith accepted only a $35,000 note when the Florida property was of a greater value and could have satisfied all or a greater part of the indebtedness without resort to the potato credit. The jury was warranted in believing that the $35,000 note plus the $20,916.70 was intended to extinguish the old indebtedness. Such a finding by the jury was not demanded but that finding certainly finds support in the evidence.

An accord and satisfaction arises where parties, by a subsequent agreement, have satisfied the former one, and the latter agreement has been executed. The execution of a new agreement may itself amount to a satisfaction, where it is so expressly agreed by the parties; and without such agreement, if the new promise is founded on a new consideration, in which case the taking of the new consideration amounts to the satisfaction of the former contract. *Burgamy v. Holton,* 165 Ga. 384, supra; Code Ann. § 105-1901; *Ga. S & F R Co. v. Blanchard,* 121 Ga. App. 82 (173 SE2d 103); *Ford Motor Co. v. Lee,* 137 Ga. App. 486, 490. While, of course, a party cannot be bound by a settlement unless he assents to its terms, still this assent may be implied from the circumstances, and conduct inconsistent with a refusal would raise a presumption of assent, upon which the other party would have a right to act. Nothing could be clearer than the proposition that where one delivers to another property, to be retained upon a condition stated, the party receiving it cannot retain the property and repudiate the condition. *Hamilton v. Stewart,* 105 Ga. 300 (31 SE 184); *Citizens Bank v. Willis,* 15 Ga. App. 772, 776 (84 SE 157).

The jury heard and construed the evidence and was properly instructed as to the law. We will not speculate as to what evidence the jury chose to believe or disbelieve; on appeal this court is bound to construe the evidence with every inference and presumption being in favor of upholding the jury's verdict. *Wren v. State,* 57 Ga. App. 641, 644 (196 SE 146); *Mills v. State,* 137 Ga. App. 305, 306 (223 SE2d 498). Where the testimony of the plaintiff and the defendant is in conflict, the jury is the final arbiter (*Crews v. State,* 133 Ga. App. 764 (213 SE2d 34); *Sims v.*

*State,* 137 Ga. App. 264 (223 SE2d 468)), and after the verdict is approved by the trial judge the evidence must be construed so as to uphold the verdict even where there are discrepancies. *Boatright v. Rich's, Inc.,* 121 Ga. App. 121 (173 SE2d 232); *Peachstone Development, Ltd. v. Austin,* 133 Ga. App. 684 (212 SE2d 18); *Cotton v. John W. Eshelman & Sons,* 137 Ga. App. 360, 365 (223 SE2d 757); *Hallford v. Banks,* 236 Ga. 472 (224 SE2d 35).

(b) As a second facet of his argument, Smith maintains that because Hornbuckle admitted some of the indebtedness still existed, there could have been no accord and satisfaction inasmuch as a new agreement is intended to extinguish totally the preexisting debt. This argument would be more persuasive if the evidence established that the understanding was that Hornbuckle was to provide a certain amount of potatoes of a set value. What the evidence did tend to show was that these two men had been engaged in business intercourse for almost 30 years based upon oral agreements. The agreement apparently accepted by the jury was that Hornbuckle would ship potatoes to Camp on order. Apparently the amount of potatoes and the value thereof would be established at the time of shipment and be credited against Hornbuckle's debt with Smith until the entire indebtedness was extinguished or canceled to the extent of the credit. Under this state of facts, the acknowledgment by Hornbuckle that he still owed $366.93 did not operate to nullify the accord and satisfaction to the full extent of $20,916.70. See *Pierson v. Herrington,* 138 Ga. App. 463.

(c) Smith also argues that the evidence of an oral agreement alleged to be an accord and satisfaction violates the Statute of Frauds, citing Code Ann. § 20-401 (2). However, Code Ann. § 20-402 contains three exceptions to the requirement that the agreement must be in writing. (1) If the agreement has been fully executed, or (2) if there has been performance by one of the parties to the agreement accepted by the other party in accordance with the agreement, or (3) where there has been such part performance of the agreement as would render it a fraud of the party refusing to comply if the court did not compel performance. There was evidence presented to the jury

which, if believed, would establish that delivery of the potatoes to Camp constituted performance by Hornbuckle; that Smith allowed Hornbuckle to harbor the mistaken impression that he (Smith) was associated with Camp in his business enterprises; that Smith agreed to credit the value of the potatoes to Hornbuckle's indebtedness to Smith; and, finally, that the agreement to extinguish the indebtedness was executed when, following Hornbuckle's delivery of the potatoes to Camp, Smith credited the potatoes to the indebtedness in December, 1969, and accepted the last notes for $35,000 and $4,283.63 but did not demand the additional $21,283.63 he now contends was still owing. Though the evidence did not demand such determination of fact by the jury, we cannot say that those conclusions are not supported by the facts. There is no merit in the contention that the accord and satisfaction in this case violated the Statute of Frauds. See *Carlton v. Grissom,* 98 Ga. 118 (2) (26 SE 77); *Chambliss v. Hall,* 113 Ga. App. 96, 98 (147 SE2d 334). Smith makes a similar argument based upon the Uniform Commercial Code, citing Code Ann. § 109A-2—201. This contention falls before the same evidentiary conclusions, for subsection (3) (c) of Code Ann. § 109A-2—201 provides that a contract not in writing may be enforced with respect to goods for which payment has been made and accepted or which have been received and accepted.

(d) Smith argues that what Hornbuckle actually sought was a setoff rather than an accord and satisfaction and that setoff would be barred by the statute of limitation. Code § 3-708. Hornbuckle does not argue that there was a setoff but contends solely for an accord and satisfaction. We are satisfied that the evidence supports an accord and satisfaction and need not consider whether the statute of limitation would apply to a setoff. As to the defense of accord and satisfaction, it is clear that as long as the plaintiff has a legal right to sue on notes, the defendant would have a correlative right to defend. The plaintiff can not insist upon the statute of limitation in order to avoid the defendant's defense, while seeking to enforce the contract against him. *Swindell & Co. v. Bainbridge State Bank,* 3 Ga. App. 364, 371 (60 SE 13).

Smith also makes a similar argument concerning the doctrine of mutual accounts. Again we will not consider the applicability of this doctrine to this case for Hornbuckle does not rely on such a theory. The trial court did not err in refusing to grant a directed verdict as to Counts 1, 2 and 3.

2. In his second enumeration of error, Smith contends that the evidence was insufficient to support the jury's verdict and the judgment of the court. He argues that the evidence did not show an accord and satisfaction; that the promissory notes were not subject to setoff; that the evidence did not show the potatoes were connected to the promissory notes; that since the two $11,000 notes and the $4,283.93 interest note were not returned along with the other notes when Hornbuckle delivered the $35,000 note this was evidence that the undelivered notes were not extinguished; that the sweet potatoes were sold to Camp and not to Smith and that those that were sold to Camp constituted only a small part of the total since the remainder were sold to D & B Enterprises or South Georgia Brokers; that there was a failure of proof to show that the potatoes shipped were ever received by Camp; and finally no value was established for the potatoes delivered in that no evidence was offered of market value or of a contract price.

Each of these arguments goes to whether the jury would accept the position offered by Smith or by Hornbuckle. There was evidence that potatoes were placed on Hornbuckle's loading dock in response to orders placed with Hornbuckle by Camp. Various truck drivers picked up these potatoes and ostensibly delivered them to Camp's place of business. Vouchers were prepared to show these shipments. These vouchers showed the quantity of potatoes delivered and the price charged. On November 17, 1969, Smith's business, South Georgia Brokers, requested a detailed statement from Hornbuckle's business records showing the amount and value of potatoes due and payable to Hornbuckle. Evidence offered by Hornbuckle showed the amount of potatoes delivered and the dates of those deliveries and established the value of those potatoes as $20,916.70. Hornbuckle's bookkeeper testified as to the preparation of these documents and

gave oral testimony as to the shipments as well as the value of those shipments.

Our responsibility on appeal is not to weigh the evidence and give a de novo opinion on where the greater weight of the evidence lies, but merely to determine if there is sufficient evidence to authorize the trial court's judgment. *Hallford v. Banks,* 236 Ga. 472, supra; *Hill v. State,* 236 Ga. 703 (224 SE2d 907). In passing on the sufficiency of the evidence to support the verdict and judgment, appellate courts are to afford the evidence that view which is most favorable to the verdict, for every presumption and every inference is in favor of the verdict. *Morgan v. State,* 77 Ga. App. 516, 517 (48 SE2d 681); *Taylor v. State,* 138 Ga. App. 95, 96. And, if there is any evidence to support the verdict, it must be affirmed. *Johnson v. State,* 231 Ga. 138 (1) (200 SE2d 734); *Talley v. State,* 137 Ga. App. 548, 549 (224 SE2d 455). That standard is satisfied by the evidence in this case. *Proctor v. State,* 235 Ga. 720, 721 (221 SE2d 556); *Jackson v. State,* 138 Ga. App. 208, 209 (225 SE2d 763).

3. In his last four enumerations of error, Smith complains the trial court erred in allowing into evidence three items of documentary evidence. He contends that one was never tendered, and the other two were irrelevant as referring to D & B Enterprises, South Georgia Brokers and Service Plant Co. (the trade name used by Hornbuckle), were self-serving in content or hearsay.

As noted in Division 2 of this opinion, the bookkeeper who prepared the books for Hornbuckle testified as to her preparation of some of these documents. Also Hornbuckle's son testified that some of the documents were prepared personally by him. These witnesses testified relative to the contents of these documents as did Smith and other witnesses. The critical facts in issue included whether potatoes were shipped to Camp, the quantity of those potatoes, to whom they were shipped and the value of the potatoes. The witnesses testified as to these facts both from their personal knowledge and from the information contained on the documents. All this oral testimony was allowed basically without objection by Smith.

Where the existence of a fact is the question at issue

and not the contents of a writing, then oral and written evidence of the fact may be primary evidence. *Willingham v. State,* 134 Ga. App. 603, 606 (215 SE2d 521). In this case the testimony of the witnesses was competent to establish the same facts contained in the documents. Even if we were to assume that the documents were wrongfully admitted, it would constitute harmless error since other admissible evidence of the same facts was introduced without objection. *Robinson v. State,* 229 Ga. 14 (189 SE2d 53); *Glass v. State,* 235 Ga. 17 (218 SE2d 776). These enumerations are without merit.

*Judgment affirmed. Quillian, P. J., and McMurray, J., concur.*

ARGUED OCTOBER 13, 1976 — DECIDED JANUARY 5, 1977.

*Kelley, Allen & Kelley, D. Lynn Kelley,* for appellant.

*Kunes & Kunes, G. Gerald Kunes, Carlton A. Fleming, Jr.,* for appellee.