## 55806. WILLIAMS et al. v. McCOY LUMBER INDUSTRIES, INC.

BIRDSONG, Judge.

McCoy Lumber Industries, Inc. (McCoy) brought suit against Sigma Industries, Inc. (Sigma), on account, and by amendment, added as parties defendant Francis E. Williams III and George D. Copelan, individually and Copelan and Williams, as partners. From an adverse jury verdict, Williams, Copelan, and the partnership appeal,

enumerating as error the trial court's overruling of their motion for directed verdict, judgment n.o.v., and new trial. *Held:*

1. "[O]n appeal this court is bound to construe the evidence with every inference and presumption being in favor of upholding the jury's verdict. [Cits.]. . . [A]fter the verdict is approved by the trial judge the evidence must be construed so as to uphold the verdict even where there are discrepancies. [Cits.]" *Smith v. Hornbuckle,* 140 Ga. App. 871, 874 (232 SE2d 149). Viewed according to these rules, the evidence showed that Sigma, a general contractor, contracted with appellants to construct certain apartments in Columbus, Ga., and that McCoy furnished Sigma materials to be used in constructing these apartments. During construction, Sigma became delinquent in its account with McCoy, which threatened to terminate further deliveries. To forestall such action, Sigma and McCoy entered into an agreement with appellants on April 20, 1976, which provided as follows:

"Dear Mr. Williams & Copeland [sic]:

"This is to advise you that we are indebted to McCoy Lumber Industries, Inc., P. O. Box 3583, Greensboro, North Carolina 27402, [sic] a total amount of $61,615.92.

"It is agreed that we need approximately twenty three [sic] loads of material to complete this job, which is estimated to be approximately $90,000.00.

"This agreement with McCoy Lumber Industries, Inc. is made *for the purpose of inducing McCoy to ship* the balance of *materials* needed for this job, which orders have been turned over to them for shipment with in [sic] the next two days to be used in completion of your project. [Emphasis supplied.]

"In consideration of the shipment of these materials and to give a schedule of payment, we hereby direct you to make a joint check from our present draw which is due us on or about the 26th of April 1976, a check in the amount of $15,779.96, which will cover the following invoices: . . . [totaling] $15,779.96.

"We hereby direct and ask you to make a joint check from our May 15 draw in the amount of $45,835.96 covering the following invoices: . . .[totaling] $45,835.96.

"We further ask you to make a joint check on our

June 15 draw for the amount of material shipped to us for your job, a copy of the invoices will be furnished you on each load.

"This should complete the job as to lumber, plywood, siding, etc.

"I would appreciate it if you will acknowledge this agreement below and upon paymement [sic] of the draws issue checks accordingly.

"Sincerely, C. W. Hicks, Vice President, Sigma Industries.

. . .

"I, Francis Williams, partner with George Copeland [sic], do hereby acknowledge this instrument and do hereby sign same *for the purpose contained therein.* [Emphasis supplied.]

"Signed this the 21st day of April 1976.

"Francis Williams and George Copeland [sic]"

On April 29, 1976, appellants issued to Sigma and McCoy, jointly, a check in the amount of $15,799.96; attached thereto was a message which stated, inter alia: "By issuing this check, [appellants] do not assume any liabilities or obligations owed by Sigma Industries and expressly deny any liability for same." This communication contained no reference to the agreement executed on April 20, 1976. Finally, in a telephone conversation on May 12, 1976, Williams stated to McCoy his intention to comply with the April 20 agreement. The verdict was supported by the evidence.

2. Appellants argue that the agreement required only that they issue joint checks to Sigma and McCoy, in amounts stipulated in the agreement, but only when such sums were in fact due Sigma. McCoy, on the other hand, contended that the agreement was in the nature of a surety, pursuant to which appellants were obligated to pay sums due McCoy from Sigma.

At minimum, the intentions of the parties were ambivalent and not susceptible of pertinent rules of construction, particularly in view of the language emphasized in the above-quoted agreement, viz.: *"for the purpose contained therein."* The stated purpose of this agreement was to induce McCoy to continue deliveries to Sigma, and the most obvious such inducement was

appellants' consent to act as surety for Sigma. Thus, there existed ambiguities in the terms of the contract.

3. " 'Where the terms of a contract are ambiguous, the intention of the parties is a question for the jury.' [Cits.]" *Mullite Co. of America v. Thornton,* 124 Ga. App. 568, 569 (185 SE2d 548). See Code Ann. § 20-701; *Pinkerton & Laws Co. v. Atlantis Realty Co.,* 128 Ga. App. 662 (3) (197 SE2d 749). The trial court did not err in overruling appellants' motions for directed verdict, judgment n. o. v., or new trial.

*Judgment affirmed. Bell, C. J., and Shulman, J., concur.*

ARGUED MAY 15, 1978 — DECIDED JUNE 22, 1978.

*Willis & Carter, Grover C. Willis, Jr.,* for appellants.
*William L. Tucker, Robert W. Cagle, Sprouse, Tucker & Ford,* for appellee.