Decided May 12, 1983 —<br>Rehearing denied June 28, 1983 —

*Oze R. Horton,* for appellant.

*J. M. Harris, Jr., David D. Blum, Marva Jones Brooks,* for appellee.

65694. CONTINENTAL GRAIN COMPANY v. FARMERS GIN & STORAGE COMPANY, INC.

McMurray, Presiding Judge.

This case revolves around the following question: What happened to Southern Railway Company's hopper car ("SOU 8302") between November 9, 1979, and December 4, 1979? Supposedly, according to the practice in the shipping of commodities this hopper car ("SOU 8302") was loaded, along with two other similar cars

("SOU 7932, SOU 8302, SOU 7944"), in bulk with soybeans by Farmers Gin & Storage Company, Inc. at its elevator at Wadley, Georgia, and shipped from its place of business to Continental Grain Company (Continental) at the Georgia Ports Authority, Savannah, Georgia, via Southern Railway Company (Central of Georgia Railroad) and Savannah State Docks Railroad Company (Georgia Ports Authority) for export. According to the practice in the trade "SOU 8302" was received (11-8-79?) and loaded at Farmers Gin's elevator with soybeans, on or before November 9, 1979, determined to be full (but not weighed due to lack of scales), sealed with railway seals provided by the railroad, a bill of lading obtained from Southern (or Central), along with the two other railway hopper cars, and shipped. They arrived at Savannah the next morning and were delivered to Savannah State Docks Railroad the following morning at Georgia Ports Authority where they were placed on hold for Continental.

The other two cars ("SOU 7932" and "SOU 7944") were inspected (United States Department of Agriculture) as shown on official grain inspection certificate dated November 11, 1979, as date of inspection, hopper car No. "SOU 7932" inspected by "[p]robe" for U. S. No. 2 yellow soybeans as to the top 10 feet, "Bottom not sampled" and a similar inspection certificate dated November 11, 1979, as date of inspection, showing hopper car No. "SOU 7944" inspected by "[p]robe" for U. S. No. 4 yellow soybeans as to the top 10 feet, "Bottom not sampled." Apparently they were weighed and unloaded as an official grain weight certificate, dated 11-19-79, reads "FGIS, Savannah, Georgia" showing "SOU 7932" with gross "278320" and tare "56600" or net weight of 221,720 pounds. As to "SOU 7944" a total weight was shown for the commodity "Ysb" by Continental Grain Company as 220,790 pounds. However, on other documents dated "12-14-79" or "79 De 14 PM 11:33," "SOU 7944" weighed gross, 274,880 ("Soy Beans"), and on "79 De 15 AM 4:36" tare 56,740 or net 218,140 ("Commodity Mty"). No definite information has been produced that Southern 8302 was ever inspected or probed or unloaded, but only its arrival and placement on "hold" for the buyer.

The bill of lading disclosed that the three cars were not weighed at their origin but their estimated total weight was 540,000 (or 180,000 each) and freight was eventually paid by the seller based upon the estimated weight, that is, changed to 220,000 per car ("SOU 7932" later shown at "221720" and "SOU 7944" at "220790"), that is, estimated, at least as to "SOU 8302." An invoice or bill dated 11-19-79 was forwarded by the seller to Continental, the buyer, for partial or advance payment which bill had reference to 18 cars of

soybeans including car number "SOU 8302." A notation by an agent of Continental on this bill shows " #8302 was not unloaded at Cont. Grain-Is being investigated . . . will be pd later," dated "1-29-80."

The seller, Farmers Gin & Storage Company, Inc., contends it loaded the car with soybeans, considered it to be full, sealed it with railway seals provided by the railroad and obtained the bill of lading for delivery, along with the other two railroad hopper cars, and same were shipped via Southern Railway and Savannah State Docks Railroad to the buyer at Georgia Ports Authority. The uncontroverted facts disclose that the railway cars were shipped (two definitely known to be full and later unloaded) and were received. However, the buyer, Continental, contends it did not unload "SOU 8302." A yard check by the railroad (Savannah State Docks) dated 11-26-79 at 6 a.m. shows "SOU 8302" as type "H" (for hopper car), contents "S/Beans" and placement as "Tk #8," along with 18 other cars, including cars of other railroads. Cars No. "SOU 7932" and "SOU 7944" were not among these cars. Again on "12-4-79" a "weight ticket," reflecting the style "Savannah State Docks & Warehouses and/or Savannah State Docks Railroad Company, P. O. Box 2400, Savannah, Georgia," shows "SOU . . . 8302" with weight of "054940" pounds, with commodity "Soybeans" stricken through and marked "MTY."

After much investigation the buyer refused to pay for the allegedly delivered soybeans, and both the buyer and seller jointly made claims upon the railroads for the loss of same. The railroads denied any liability, contending that if the soybeans were delivered in the hopper car the said hopper car was delivered to the buyer at the Georgia Ports Authority and unloaded by buyer, albeit there is no evidence that same, with contents, was ever inspected and weighed. We also find no information as to what happened to the seals, if same were properly sealed.

Whereupon, on February 20, 1981, Farmers Gin & Storage Company, Inc., as plaintiff, sued the buyer Continental Grain Company, as the third defendant and Southern Railway Company and Georgia Ports Authority d/b/a Savannah State Docks Railroad Company as the first and second defendants, jointly and severally, for the sum of $22,314 as the amount of damages for the loss of the railroad car load of soybeans. After a trial the jury returned a verdict only against Continental Grain Company. The judgment followed the verdict. Continental Grain filed a motion for judgment notwithstanding the verdict or alternatively for a new trial. The motion for new trial was later amended, and after the defendant's motions were denied, it appeals. *Held:*

It has been stipulated here that the shipment of the soybeans,

although intrastate, was an interstate shipment in view of the fact that the grain was for export. The parties have cited considerable law with reference to common carriers, but inasmuch as the case depends upon the sufficiency of the evidence with reference to the judgment against the buyer in favor of the seller in which the railroads were absolved of responsibility, by reason of the verdict, we do not believe that the law cited with reference to common carriers has any bearing upon the outcome. The verdict must be construed by this court in the light most favorable to upholding the verdict and the evidence must be strongly construed in an effort to support the jury verdict. See *Womack v. St. Joseph's Hospital,* 131 Ga. App. 63, 64 (2) (205 SE2d 72); *Associated Mutuals v. Pope Lumber Co.,* 200 Ga. 487, 496 (37 SE2d 393); *Smith v. Hornbuckle,* 140 Ga. App. 871, 875 (1) (232 SE2d 149). If there is conflicting evidence or there is insufficient evidence to make a "one-way" verdict proper, a judgment notwithstanding the verdict should not be awarded. See in this connection *Church's Fried Chicken v. Lewis,* 150 Ga. App. 154, 159 (1) (256 SE2d 916); *Bryant v. Colvin,* 160 Ga. App. 442, 444 (287 SE2d 238). It is apparent from the evidence here that due to the shipping of a considerable supply of soybeans during the time in question there was a great deal of laxity by all parties concerned with reference to the checking and keeping of records as to soybeans shipped in railroad cars. It could be that the particular hopper car ("SOU 8302") was never filled or properly sealed by the seller, although certainly a bill of lading was obtained for it as being full and allegedly sealed for shipment and it was eventually delivered to the buyer via the railroads in question. Nevertheless, there was much evidence by various witnesses for the plaintiff, as well as the defendant railroads, with reference to the fixed and uniform habits of the parties in the handling of such soybean shipments. A witness may have no distinct and independent recollection of the details of a fact occurring in the course of the routine of his business, yet he may testify to a fixed and uniform habit in such cases and "state that he knows that what he did in a given transaction was in accordance with that habit... The probative value of such evidence is for the jury" to determine. *Leonard v. Mixon,* 96 Ga. 239, 241 (23 SE 80). See also *Interstate Life &c. Ins. Co. v. Whitlock,* 112 Ga. App. 212 (2), 219 (144 SE2d 532); *Burch v. Americus Grocery Co.,* 125 Ga. 153 (3) (53 SE 1008). Three of the employees or agents of the plaintiff clearly testified as to the procedure employed in loading the soybeans (unweighed, to be weighed at destination) and in notifying the railroad of the cars being ready for shipment. These witnesses established that the railway cars, including the two other cars that were weighed and unloaded and received by the defendant buyer, were ordered from the railroad,

placed upon the side track for the plaintiff, allegedly loaded and turned over to the railroad with bill of lading, that is, loaded and sealed. The bill of lading was obtained from the railroad with reference to shipment to the defendant buyer at the destination. Plaintiff's president testified that he generally checked to ensure that all cars had been loaded which were subject to a bill of lading, although he had no actual knowledge of checking this particular car. The testimony of the defendant railroads was, in substance, that they considered the hopper car to be filled and same was delivered to the buyer where it remained for a period of time before it was discovered empty (weight of "054940" pounds) on December 4, 1979. Other evidence was submitted with reference to occasions when other cars were shipped and unloaded without being weighed. A witness for the defendant Savannah State Docks Railroad testified that it would be highly unusual for a third car in a shipment of three not to be inspected and probed as in this case where two of the three cars were probed immediately upon their receipt by Savannah State Docks Railroad. Due to the mistakes and mishaps in other instances the jury was authorized to determine that car "8302" was in fact delivered to Continental Grain Company's rail track at which point it could be deemed to have been delivered as loaded and sealed. While this defendant sought to show its lack of ability to move the cars without the assistance of the Savannah State Docks Railroad at the Georgia Ports Authority, there was other evidence that it had the capacity of moving the cars along the rail track, and the jury was authorized to believe defendant had unloaded this car despite the lack of records to the contrary, the car having been shown to have been in the vicinity of the unloading hopper from November 11, 1979, until the time of a spot check on November 26, 1979, and until December 4, 1979, thereafter, when it was discovered empty. While the evidence in this regard may indeed be slight the jury could infer from the evidence that the defendant received the soybeans, unloaded them and failed to account for same. The trial court did not err in denying the defendant Continental Grain Company's motion for judgment notwithstanding the verdict or in the alternative a motion for new trial based on the general grounds with reference to the sufficiency of the evidence.

*Judgment affirmed. Shulman, C. J., and Birdsong, J., concur.*

DECIDED MAY 13, 1983 —
REHEARING DENIED JUNE 28, 1983.

*John I. Harper,* for appellant.

*James B. Wall, Milton A. Carlton, Sr., John R. Murphy III,* for appellee.