[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 6, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-12829

_____

D. C. Docket No. 99-00719 CV-CAP-1


INFORMATION SYSTEMS AND
NETWORKS CORPORATION,
A Maryland Corporation,

                                        Plaintiff-Appellant,

        versus


THE CITY OF ATLANTA,
A State of Georgia Entity,
HERBERT L. MCCALL,
Commissioner, Department of
Administrative Services, City of Atlanta,

                                        Defendants-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(February 6, 2002)**

Before TJOFLAT and BIRCH, Circuit Judges, and GOLDBERG[*], Judge.

BIRCH, Circuit Judge:

In this contract dispute, we address the difference between an acceptance and a counteroffer under Georgia law. The district court granted summary judgment to the City of Atlanta ("the City"), holding that the City never accepted the contract terms offered by Information Systems and Networks Corporation ("ISN"). According to the district court, the document which ISN construed as an acceptance was actually a counteroffer. Upon review, we conclude that the district court's grant of summary judgment was inappropriate due to the genuine dispute over the intention behind and the purpose served by the document at issue. For the reasons stated below, we AFFIRM in part, REVERSE in part, and REMAND for judicial action consistent with this opinion.

## I. BACKGROUND

Although the Year 2000 ("Y2K") did not usher in the apocalypse, it did leave us with a number of contract disputes. In 1998, the City of Atlanta

---

[*] Honorable Richard W. Goldberg, Judge, U.S. Court of International Trade, sitting by designation.

contracted with a number of vendors, including ISN, to provide Y2K remediation services. The City's Notice of Award to ISN indicates that the contract would run from 28 January 1998 through 30 June 2001, and that any work performed under the contract would require "an agreement of the parties on sizing, scope and price of work to be performed." R6-59 Exh. 12. The Notice of Award was accompanied by the formal Statewide Contract which established the terms of the agreement between ISN and the City. Section 24 of the Statewide Contract incorporates multiple documents into the agreement: the Notice of Award and any amendments thereto, the City's Request for Proposals, the Contractor's Proposal, and all Field Purchase Orders ("FPOs"). R6-59 Exh.9 at 5.

In August of 1998, the City issued a Statement of Need which detailed its expectations regarding Y2K remediation. ISN responded with a proposal entitled "Program Management Office Support Services For City Of Atlanta Citywide Year 2000 Compliance"[1] which estimated the cost of Y2K program management to be $5,092,452. R6-59 Exh.13 at 6. After ISN began work for the City, it became apparent that the City would require more substantial Y2K remediation, including inventory analysis and impact assessment. See R6-59 Exh.23 (FPO for inventory

---

[1] During this time frame, ISN submitted a proposal unrelated to Y2K which is not at issue in this case.

and impact services dated 25 November 1998).  For this reason, the City generated a second — and more extensive — Statement of Need in December of 1998.  R2-12 Exh.11.  With the extent of the City's need recognized, Commissioner Herb L. McCall purportedly urged ISN to hire the workers necessary to complete the task at hand.  R6-59 Exh.24.  ISN therefore hired approximately 100 additional workers, and arranged with a subcontractor for 40 more.  As a formal response to the City's revised Statement of Need, ISN submitted a second proposal in February of 1999, which estimated the total cost for Y2K remediation, including program management as well as inventory and impact services, to be $13,091,118.  R6-29 Exh.22 at 48.

It is clear that ISN's proposals were offers; the dispute is over the characterization of the City's response.  According to ISN, Commissioner McCall orally agreed to the proposals.  Verbal commitments aside, documentation supports the City's intent to enter into some agreement. The City generated a series of FPOs, each one a request that ISN perform certain Y2K-related services.  Although most of the FPOs list the cost associated with particular services, one FPO is a "blanket order" for Y2K services with ".00" listed as the cost to be paid by the City.  R6-59 Exh.23.

ISN argues that the City accepted its offer of global Y2K remediation

4

services through the FPOs. The City, on the other hand, argues that the FPOs were counteroffers for discrete Y2K-related projects, accepted by ISN through performance. Based on the City's theory, the cost for services should be less than $3 million - the sum of the costs associated with the particular projects listed on the various FPOs. This dispute would likely be nonexistent but for the fact that the City terminated ISN's contract on 5 March 1999, claiming dissatisfaction with the services rendered.

According to ISN, however, the reason for termination was ISN's refusal to hire the minority subcontractor preferred by Commissioner McCall. R1-1-15. Although ISN had already hired a minority subcontractor from the state's list of approved vendors, Commissioner McCall allegedly urged ISN to hire an unapproved vendor. ISN refused and got fired. ISN sued the city for breach of contract, for fraud and misrepresentation in inducing ISN to enter the contract, and defamation based on the statements made by Commissioner McCall regarding the quality of ISN's work.

The district court granted summary judgment for the City, finding that the breach of contract claim failed for three reasons: (1) Commissioner McCall lacked the authority to commit the City to a contract, (2) Commissioner McCall's oral acceptance was invalid because written acceptance was required, and (3) the City's

5

FPOs were counteroffers, not acceptances. The district court further found that the defamation claim failed as a matter of law because the statements at issue were statements of opinion, incapable of being disproven. Lastly, the district court found that the fraud and misrepresentation claims must fail as well since ISN did not comply with ante litem notice requirements of Georgia law.

ISN appeals the grant of summary judgment. Based on our review, we affirm two of the district court's findings: McCall lacked the authority to contract for the City and McCall's statements regarding ISN's performance do not constitute defamation. We also reverse two of the district court's findings. First, we conclude that ISN substantially complied with the requirements of the ante litem statute; the fraud and misrepresentation claims may therefore proceed. Second, we conclude that the City did not meet the standard for summary judgment with respect to the role played by the FPOs in contract formation. Interpreting the facts in the light most favorable to ISN, we conclude that a reasonable jury could find that the City accepted ISN's offer through the FPOs. On these two issues, we reverse the grant of summary judgment for the City and remand to the district court.

## II. DISCUSSION

We review a grant of summary judgment de novo, applying the same legal standards as the district court. Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir. 1998). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute is genuine only if "a reasonable jury could return a verdict for the nonmoving party." United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (citation omitted). The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the district court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986).

## A. The Breach of Contract Claim

### 1. Commissioner McCall's Authority

Both parties acknowledged that some contract existed; the issue is the nature — and therefore the extent — of the obligation.[2]  According to ISN, Commissioner McCall verbally accepted ISN's offer to manage and coordinate Y2K remediation. The City argues that McCall's acceptance, whether verbal or written, is legally irrelevant since McCall did not have the authority to contractually bind the City.

Under Georgia law, one who deals with a public officer must determine whether the officer has the authority necessary to bind the public entity.  City of Atlanta v. Black, 265 Ga. 425, 426, 457 S.E.2d 551, 552 (1995).  Such due diligence may require a party to take affirmative steps; parties are presumed to know the law.  O.C.G.A. § 1-3-6.  Furthermore, a party is charged with notice of state law as well as municipal codes.  City Council of St. Mary's v. Crump, 251 Ga. 594, 595, 308 S.E.2d 180, 182 (1983).

Upon review of the documents governing Atlanta, it is clear that Commissioner McCall lacked the authority to contract on the City's behalf.  Only two people are so authorized: section 3-104(10) of the City Charter grants the

---

[2]  We reach no conclusion on whether a contract did indeed form.  On remand, the district court may find that there was no meeting of the minds between the City and ISN, and that contract formation therefore never occurred. See Hennessey v. Froehlich, 219 Ga. App. 98, 98, 464 S.E.2d 246, 247 (1995).

8

power to the mayor, and section 2-1137(a) of the City Code grants the power to the City's "purchasing agent." Other than these two officers, "no city officer or employee shall order the procurement of supplies, services, construction, professional or consultant services and real estate or make any contract other than through the bureau of purchasing and real estate." Atlanta City Code, § 2-1138(c).

We note that the purchasing agent, who has the authority to contract for the City, reports to Commissioner McCall. ISN's belief that Commissioner McCall could contract for the City thus seems fairly reasonable. An apparent authority theory, however, cannot succeed under these circumstances. Under Georgia law, the "[p]owers of all public officers are defined by law and all persons must take notice thereof. The public may not be estopped by the acts of any officer done in the exercise of an unconferred power." O.C.G.A. § 45-6-5.

This statute was applied in 1997 when the City of Atlanta faced almost identical litigation. Two public officers, without the authority to do so, signed a contract committing Atlanta to payment for consulting services. When the consultants sued the City for breach of contract, the court reasoned that "[s]ince this case does not involve an irregular or unauthorized method of exercising a granted power, but rather action taken by City officials who had no authority to do so, the unauthorized nature of the contract precludes [the plaintiffs] from asserting

9

estoppel against the City." Walston & Assocs., Inc. v. City of Atlanta, 224 Ga. App. 482, 483, 480 S.E.2d 917, 918 (1997). Furthermore, "[t]here can be no estoppel by conduct where both parties have equal knowledge or equal means of knowing the truth." Tybrisa Co. v. Tybeeland, Inc., 220 Ga. 442, 446, 139 S.E.2d 302, 306 (1964). Here, ISN had both the means to know the truth and the duty to discover it. Any acceptance made by Commissioner McCall bound the City to nothing.

### 2. The Intent Behind the FPOs

ISN presents a second theory of contract formation: the City intended to accept ISN's offer when it issued the FPOs which authorized ISN to begin work.[3] "The cardinal rule of contract construction is to ascertain the intent of the parties" and to interpret a contract so that the parties' intentions are given effect. Sheridan v. Crown Capital Corp., 251 Ga. App. 314, 316, 554 S.E.2d 296, 299 (2001). While "[t]he construction of a contract is a question of law for the court," O.C.G.A. § 13-2-1, a jury question is presented when the rules of construction fail to resolve an ambiguity regarding the terms of a contract. Andrews v. Skinner, 158 Ga. App.

_____

[3] Because the FPOs were signed by the City's purchasing agent, this theory of acceptance presents no issue of authority.

229, 230, 279 S.E.2d 523, 525 (1981). Under such circumstances, the intent of the parties becomes a question of fact for the jury. Williams v. McCoy Lumber Indus., Inc., 146 Ga. App. 380, 383, 246 S.E.2d 410, 412 (1978).

The district court found that the City intended that the FPOs serve as offers, and that ISN accepted those offers through performance. After a de novo review, however, we conclude that the City's intent is material fact in genuine dispute. There are substantial questions of fact remaining such that judgment as a matter of law at this juncture is legally impermissible.

The City' argument is based on the legal principle that an offer must be accepted unequivocally for a contract to form. State Highway Dep't. v. Wright Contracting Co., 107 Ga. App. 758, 766, 131 S.E.2d 808, 813 (1963). If a party purportedly accepts an offer, but changes a term, then the party has actually generated a counteroffer. Id. at 765, 131 S.E.2d at 813. The City points to five FPOs, each of which requests named services for a sum certain.[4] Based on the difference in scope between the services requested in the FPOs and the services

---

[4] In the first FPO, # 0098101514, the City requested $400,000 worth of services related to Y2K Legacy System Upgrade and Support. The same FPO number was used to order $400,000 worth of services for a citywide Y2K program manager. FPO # 3098210693 was an order for "Non Legacy/PC Embedded" services for a total cost of $196,000. In FPO #3098210694, the City requested an item described as 9222000 BMIS/OS30 which cost $170,000. FPO # 0099210011 requests an MVS Programmer for 1458 hours for a cost of $218,7000.

offered in ISN's proposal, the City argues that the FPOs were counteroffers.

Furthermore, the City points to the provision in the Notice of Award which states

that all work must be authorized by an FPO.

On cursory review, summary judgment for the City appears reasonable. The

facts as presented by ISN, however, substantially undermine the City's argument.

Because the City has moved for summary judgment, the facts must be interpreted

in the light most favorable to ISN. Burton, 178 F.3d at 1187. First of all, ISN

points to FPO # 0098310463, an FPO conspicuously absent from the City's brief,

which uses the words "Blanket Order for Year 2000 (Y2K) Program

Management." R6-59 Exh.23. This FPO calls for inventory and assessment

services as well, and lists ".00" for the cost.[5] Id. This FPO supports ISN's

argument that the agreement between the parties was a more global contract for

Y2K remediation, and not just a series of smaller contracts for discrete work

projects.[6]

ISN further undermines the City's argument by pointing to the scarcity of

---

[5] The FPO limits the total expenditure to no more that $1 million.

[6] ISN's argument that the contract was more significant than the projects requested in the FPOs is supported by the amount of money the City has paid ISN. It is not contested that the City has paid ISN more money than the sum of the costs listed in the FPOs. At oral argument, counsel for the City indicated that such overpayment reflected a quantum meruit approach to compensation. We are unconvinced, and believe that further facts must be developed to determine the truth of the City's intentions with respect to the FPOs.

12

detail in the FPOs. Under the City's theory, a contract was formed each time the City issued an FPO and ISN performed. No contract can form, however, without certainty of terms.[7] "The requirement of certainty extends not only to the subject matter and purpose of the contract, but also to the parties, consideration, and even the time and place of performance where these are essential." Laverson v. Macon Bibb County Hosp. Auth., 226 Ga. App. 761, 762, 487 S.E.2d 621, 623 (1997). We begin with the element of subject matter, and immediately see a problem with the City's argument that the FPOs were offers. The FPOs provide ISN with little guidance as to the work requested; FPO # 3098210694 lists the parties, the anticipated completion date[8] and the price, but information regarding the nature of the work requested is limited to "Re State Contract #SWC 80701/BMIS/0S30." R5-54 Exh.C. The rest of the document consists of the standard contract terms included in every FPO issued by the City. A contract must have enough certainty that each party has a cause of action for breach. Laverson, 226 Ga. App. at 762,

_____

[7] The City argues that we should not consider this argument since ISN raises it for the first time on appeal. See Ochran v. United States, 117 F.3d 495, 502 (11th Cir. 1997). At district court, ISN argued that the FPOs were not counteroffers. The absence of certainty in the FPOs serves as further support for the same argument. When a party presents something on appeal that is "part and parcel of its original argument," then we will consider it. Polo Ralph Lauren v. Tropical Shipping & Const., 215 F.3d 1217, 1221-22 (11th Cir. 2000).

[8] It is worth noting that the due date for performance is set for a date that precedes the date on which the FPO was generated. R5-54 Exh.C. Other FPOs also appear to have been issued after the requested work was completed. The City's argument that the FPOs were offers flounders if the work requested was completed before the offer was made.

487 S.E.2d at 623. Indeed, "indefiniteness in subject matter so extreme as not to present anything upon which the contract may operate in a definite manner renders the contract void." Peachtree Med. Bldg., Inc. v. Keel, 107 Ga. App. 438, 441, 130 S.E.2d 530, 532 (1963).

The certainty required for contract formation, argues ISN, comes from the ISN's proposal: it is only with those details that the agreement becomes a contract. The Statewide Contract supports ISN's argument, providing that

> The Notice of Award, the Notice of Award Amendment, contract, this revised contract, the RFP [Request for Proposals] . . . *and Contractor's Proposal* (and any documents referenced therein) submitted in response thereto, including any best and final offer, *are incorporated by reference into this revised Contract* (and any FPO issued pursuant to this Contract) and form an integral part of this Contract and any FPOs.

R6-59 Exh.9 (emphasis supplied). ISN's proposal supplies the information necessary for a contract to form: the nature, cost, and timing of particular Y2K remediation services. While a conflict between documents drafted by the City and those drafted by ISN should be resolved in favor of the City, see R6-59 Exh.9, there is not necessarily a conflict in this case. Instead, ISN's proposal serves as a supplement. While the absence of conflict is particularly apparent in FPO # 0098310463, the "blanket order" for Y2K program management, each of the City's FPOs can — and indeed must — be read in concert with ISN's proposal. Only by

14

reading the documents together is the requirement of certainty satisfied.

Lastly, ISN alleges that the City's reason for terminating the contract was not dissatisfaction with services rendered, but rather ISN's refusal to hire a particular minority subcontractor favored by Commissioner McCall. Not enough facts have been developed to treat ISN's argument, but we find the allegation troubling. We conclude that ISN has demonstrated that a genuine issue of material fact exists regarding the role of the FPOs in contract formation, and reverse the district court's order of summary judgment for the City.

## B.  The Defamation Claim

ISN brings a defamation claim against Commissioner McCall in his personal and professional capacities. McCall stated that he found ISN's performance on the Y2K contract to be inadequate, and his statements were subsequently published. Under Georgia law, three elements must be proven to establish defamation: (1) the statement was false, (2) the statement was malicious, and (2) the statement was published. O.C.G.A. § 51-5-1(a). Our analysis of ISN's defamation begins and ends with the first element.

Because Commissioner McCall's statement was an opinion — and thus subjective by definition — it is not capable of being proved false. "A speaker

15

cannot be sued for simply expressing his opinion . . . , however unreasonable the opinion or vituperous the expressing of it may be." Elder v. Cardoso, 205 Ga. App. 144, 145, 421 S.E.2d 753, 755 (1992). True, statements which tend to injure one's business reputation are libelous per se. John D. Robinson Corp. v. Southern Marine & Indus. Supply Co., 196 Ga. App. 402, 404, 395 S.E.2d 837, 840 (1990). The exception relating to the speaker's opinion, however, applies to circumstances in which an employer or manager comments on the job performance of a subordinate. ITT Rayonier, Inc. v. McLaney, 204 Ga. App. 762, 765, 420 S.E.2d 610, 613 (1992) (noting that "the evidence shows . . . that [the defendant employer] was of the general opinion that appellee's job performance was unsatisfactory and . . . expression of such opinions does not constitute an actionable defamation"). Since Commissioner McCall's statement cannot be proven false, ISN's defamation claim fails.

## C.  Ante Litem Notice

In Georgia, no tort action may be brought against a municipal government until the claimant "present[s] the claim in writing to the governing authority of the municipal corporation for adjustment, stating the time, place, and extent of the injury, as nearly as practicable, and the negligence which caused the injury."

16

O.C.G.A. § 36-33-5(b). The ante litem notice statute further provides that the claimant may not file its complaint until one of the following two events occurs: the city acts on the claim, or 30 days pass since presentation of the notice. O.C.G.A. § 36-33-5(c); Jones v. City of Austell, 166 Ga. App. 808, 809, 305 S.E.2d 653, 654 (1983). The City argues that ISN failed to observe the ante litem notice requirements, and that ISN's remaining tort claims — misrepresentation and fraud — must fail.

A claimant's substantial compliance with the ante litem notice statute is sufficient. Canberg v. City of Toccoa, 245 Ga. App. 75, 77-78, 535 S.E.2d 854, 856-57 (2000). The policy goal of the statute is to provide notice of a potential suit so that a city may investigate the claims and decide whether settlement or litigation is the more appropriate course. Id. The claimant must communicate, in a general way, the nature of the complaint as well as the time, place, and extent of the injury. Id. at 77, 535 S.E.2d at 856. The March 4 letter from ISN to the City includes those elements. R6-59 Exh.57. The termination of the contract between the parties is the subject of the letter, thus the nature and the extent of the injury are communicated. Also, ISN specifically references the conversation between Commissioner McCall and Roma Malkani, the president of ISN, so the elements of time and place are included. Indeed, ISN even lists potential causes of action.

The City argues that even if the March 4 letter includes the necessary substantive elements, ISN ran afoul of the statute by ignoring its timeline. According to the City, the statute bars filing a suit until 30 days have expired since the presentation of notice. Thus under the City's theory, ISN's March 4 notice cannot be followed by its March 18 filing. The City, however, misinterprets statutory requirements. The statute "contemplates that suit shall not be brought until after the municipal authorities have acted upon the claim, *or* have failed to take action thereon within thirty days." City of Austell, 166 Ga. App. at 809, 305 S.E.2d at 654 (emphasis added); see also Saunders v. City of Fitzgerald, 113 Ga. 619, 38 S.E. 978 (1901). Here, the City acted upon the claim on March 5: Commissioner McCall denied all of ISN's allegations in a letter. R6-59 Exh.58. ISN satisfied the ante litem notice provision, so the fraud and misrepresentation claims may proceed.

### III.  CONCLUSION

In this case, the district court was correct to grant the City summary judgment on two issues: whether Commissioner McCall had the authority to accept ISN's offer, and whether the statements made about ISN's job performance constituted defamation. The grant of summary judgment on the other two issues,

18

however, was inappropriate. The ante litem notice provision does not bar ISN's claims of fraud and misrepresentation; ISN's substantial compliance satisfied the statutory requirements. Most importantly, genuine issues of material fact remain with respect to the intent behind the City's FPOs. "Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts." <u>Burton</u>, 178 F.3d at 1187 (citation omitted). Accordingly, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for action consistent with this opinion.