**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARK LEMOGE and ROXINA
LEMOGE,

       *Plaintiffs-Appellants,*

v.

UNITED STATES OF AMERICA,

       *Defendant-Appellee.*

No. 08-56210

D.C. No.
3:07-cv-00620-
LAB-AJB

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted
November 4, 2009—Pasadena, California

Filed December 7, 2009

Before: Harry Pregerson and Ronald M. Gould,
Circuit Judges, and Myron H. Bright,* Senior Circuit Judge.

Opinion by Judge Gould

---

*The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

15943

## COUNSEL

David W. Baumgarten (argued), Yale & Baumgarten, LLP, San Diego, California, for appellants Mark Lemoge and Roxina Lemoge.

Karen P. Hewitt, United States Attorney, Southern District of California, and Melanie A. Andrews (argued), Special Assis-

tant United States Attorney, for appellee United States of America.

## OPINION

GOULD, Circuit Judge:

Mark and Roxina Lemoge appeal the district court's denial of their motion to set aside the dismissal of their action for personal injuries under the Federal Torts Claims Act (FTCA) against the United States and to extend time to serve the summons and complaint. The issue is whether the district court abused its discretion under Federal Rule of Civil Procedure 60(b) by denying the Lemoges relief from the dismissal. We have jurisdiction under 28 U.S.C. § 1291. We reverse and remand.

## I

In April 2004, Mark Lemoge suffered a serious leg injury at a military facility when a concrete park bench collapsed and fell on him.[1] In April 2006, the Lemoges filed an administrative tort claim pursuant to the FTCA with the Department of the Navy concerning that injury.

The Lemoges' administrative tort claim was denied, after which, on April 5, 2007, the Lemoges filed a personal injury action against the United States in the United States District Court for the Southern District of California. In June 2007, Mark Caruana, counsel for the Lemoges, sent a copy of the summons and complaint to the Navy's administrative-claims attorney. On September 5, 2007, a Navy attorney forwarded

---

[1]In assessing the issues concerning the Rule 60(b) motion, and whether the district court abused its discretion in denying relief, we accept the Lemoges' factual allegations. *See Laurino v. Syringa Gen. Hosp.*, 279 F.3d 750, 753 (9th Cir. 2002).

correspondence to Caruana stating that the United States Attorney's office needed to be served. On September 18, 2007, the district court issued an order to show cause why the action should not be dismissed for failure to serve the government with the summons and complaint pursuant to Federal Rule of Civil Procedure 4(m), which requires the defendant to be served within 120 days after the complaint is filed. On October 9, 2007, hearing nothing from the Lemoges, the district court sua sponte dismissed the Lemoges' action without prejudice.

During the time in which the Lemoges were to have served the summons and complaint, Caruana suffered medical complications, including a staph infection, from an injury to his leg. Over several months, Caruana underwent three surgeries, skin grafts, extensive therapy, and a full regimen of medications. Caruana states he was not able to "connect the dots" and therefore did not timely serve the summons and complaint and was not aware of the order to show cause or the dismissal.

Caruana subsequently discovered that the case had been dismissed. The Lemoges concede that because more than six months have passed since the denial of their FTCA claim, they are time-barred from re-filing their action under 28 U.S.C. § 2401(b). Thus, on May 8, 2008, Caruana, on behalf of the Lemoges, filed a motion to set aside the dismissal and extend time to serve the summons and complaint (the "Motion").

Simultaneous to the above events, there was a short-lived, related litigation between Granite State Insurance Company ("Granite State"), Mark Lemoge's employer's workers' compensation insurer, and the government. On November 6, 2007, after the Lemoges' action was dismissed, Granite State filed a workers' compensation subrogation claim concerning Mark Lemoge's injury (the "Granite State Action"). On May 9,

2008, the day after the Lemoges filed their Motion, Granite State and the government settled the Granite State Action.

The district court denied the Lemoges' Motion orally at the end of a July 7, 2008, hearing, and confirmed the denial through an order filed one week later. The district court construed the Lemoges' Motion as a motion for relief under Federal Rule of Civil Procedure 60(b)(1) for excusable neglect. Despite accepting that Caruana had suffered medical injuries requiring extensive treatment, the district court concluded that none of Caruana's explanations justified the significant passage of time before the Motion was filed. The district court also concluded that the government would be unfairly prejudiced if the Lemoges' action was reopened because the government relied on its dismissal in settling the Granite State Action.

The Lemoges appeal the district court's denial of their Motion.

## II

A district court's denial of relief from a final judgment, order, or proceeding under Federal Rule of Procedure 60(b) is reviewed for abuse of discretion. *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000). A district court abuses its discretion by denying relief under Rule 60(b) when it makes an error of law or relies on a clearly erroneous factual determination. *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223 (9th Cir. 2000).

Federal Rule of Civil Procedure 60(b)(1) provides as follows: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: [ ] mistake, inadvertence, surprise, or excusable neglect."

**[1]** Excusable neglect "encompass[es] situations in which the failure to comply with a filing deadline is attributable to

negligence," *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 394 (1993), and includes "omissions caused by carelessness," *id.* at 388. The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. To determine when neglect is excusable, we conduct the equitable analysis specified in *Pioneer* by examining "at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman*, 231 F.3d at 1223-24 (citing *Pioneer*, 507 U.S. at 395). Although *Pioneer* involved excusable neglect under Federal Rule of Bankruptcy Procedure 9006(b), in *Briones v. Riviera Hotel & Casino*, 116 F.3d 379 (9th Cir. 1997), we concluded that the *Pioneer* standard governs analysis of excusable neglect under Rule 60(b)(1). *See id.* at 381.

## A

We conclude that the district court did not identify the *Pioneer-Briones* standard or correctly conduct the *Pioneer-Briones* analysis and that this was an abuse of discretion.[2] While the district court conducted analysis related to the first three factors, the district court did not consider the fourth factor, good faith, or, as required under the circumstances of this case, the prejudice the Lemoges would suffer if their Motion was denied.

___

[2]*In our recent en banc decision in United States v. Hinkson*, ___ F.3d ___, No. 05-30303, 2009 WL 3645003 (9th Cir. Nov. 5, 2009 ) (en banc), we refined and restated our test for abuse of discretion as comprising a two-step inquiry. First, we "determine de novo whether the trial court identified the correct legal rule to apply to the relief requested." *Id.* at *11. If the trial court did not identify the correct legal standard, it is an abuse of discretion. *Id.* Second, a trial court abuses its discretion if its "application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (quotations and citation omitted).

**[2]** The district court did not cite to *Pioneer* or *Briones* or list the *Pioneer-Briones* factors. In *Bateman*, we held that district courts should explicitly use the *Pioneer-Briones* framework for analysis of excusable neglect under Rule 60(b)(1):

> Bateman argues that the district court abused its discretion because it failed to conduct the equitable analysis laid out in *Pioneer* and *Briones*. We agree. In its order denying relief, the district court cited *Pioneer*, but only for the proposition that "clients must be held accountable for the acts and omissions of their attorneys." The court did not acknowledge *Pioneer*'s statement that "excusable neglect" includes cases of negligence, nor did it mention the equitable test established by *Pioneer*. The court also did not mention this court's adoption of the equitable test for Rule 60(b)(1) cases in *Briones*.
>
> . . . .
>
> . . . The court would have been within its discretion if it spelled out the equitable test and then concluded that [the attorney] had failed to present any evidence relevant to the four factors. But it abused its discretion by omitting the correct legal standard altogether.

*Bateman*, 231 F.3d at 1224 (internal citation omitted). In *Bateman*, we concluded that as long as the substance of the equitable analysis called for by *Pioneer-Briones* is undertaken, reversal may not be necessary:

> We would not ordinarily reverse a court simply for failing to articulate the *Pioneer* and *Briones* test, as long as it actually engaged in the equitable analysis those cases mandate. However, it does not appear the district court did so here . . . .

> While these factors [provided by the district court] are certainly relevant to the determination of whether [the attorney's] conduct was excusable, they revolve around just one of the *Pioneer* and *Briones* considerations—the reason for the delay. The court made no mention of the other three: the prejudice to the defendant, the length of the delay and its potential impact on the proceedings, and whether [the attorney] acted in good faith.

*Id.* We concluded that the district court abused its discretion by applying the wrong legal standard, and remanded with instructions to grant the Rule 60(b)(1) motion. *Id.* at 1225.

As in *Bateman*, here "[t]he court did not . . . mention the equitable test established by *Pioneer*" or "spell[ ] out the equitable test." *Id.* at 1224. It is not, moreover, merely a matter of the district court not citing and stating the test required by *Pioneer* and by *Briones*. More importantly, we are concerned that the substance of the district court's analysis wholly omitted discussion of one of the four factors said to be relevant by the Supreme Court in *Pioneer*. Therefore, following the test stated by us recently in *United States v. Hinkson*, we conclude that the district court abused its discretion by not "identif[y-ing] the correct legal rule" and omitting analysis of an important part of that rule. ___ F.3d ___, No. 05-30303, 2009 WL 3645003, at *11 (9th Cir. Nov. 5, 2009 ) (en banc).

There are substantial reasons why the courts of appeals and the district courts should pay close heed to a standard that has been expressly set by the United States Supreme Court, and normally conform their analysis to it. National uniformity of federal law is a virtue in its own right. *See* Ruth Bader Ginsburg & Peter W. Huber, *The Intercircuit Committee*, 100 Harv. L. Rev. 1417, 1424-25 (1987) ("Uniformity promotes the twin goals of equity and judicial integrity—similar treatment of similar litigants secures equity, while it also inspires confidence in the legal system, a confidence crucial to the

effective exercise of judicial power.") (citation omitted). But pragmatic concerns limit the amount of cases the Supreme Court is able to review. To aid uniformity of law, it is important that the Supreme Court's interpretations of law are adopted and followed by lower courts. Moreover, we are told that we are to pay close attention even to Supreme Court dicta. *See Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1129 (9th Cir. 2006) (en banc) ("[A]s a lower federal court, we are advised to follow the Supreme Court's considered dicta.") (quoting *Oyebanji v. Gonzales*, 418 F.3d 260, 264-65 (3d Cir. 2005)). It follows with stronger logic that when a Supreme Court case identifies explicitly just four factors to be considered in assessing a type of problem, then whatever else is discussed, the analysis of the lower court should normally address the factors that the Supreme Court has identified. *See, e.g., Laurino v. Syringa Gen. Hosp.*, 279 F.3d 750, 753-54 (9th Cir. 2002) (holding that the district court abused its discretion after noting that the district court did not address *Pioneer-Briones*'s good-faith factor); *Bateman*, 231 F.3d at 1224 (holding that the district court abused its discretion where it considered only one of the *Pioneer-Briones* factors); *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir. 1996) ("The district court's failure to . . . apply the correct legal standard and factors as announced in *Pioneer* constitute[s] an abuse of discretion.").

**[3]** The district court conducted some analysis relevant to the *Pioneer-Briones* factors: the district court stated that the government would be unfairly prejudiced if the case were reopened, that the Lemoges' Motion came seven months after the case was dismissed, and that Caruana's explanations did not justify the significant passage of time before relief was requested. This discussion loosely fits within the framework of the first three *Pioneer-Briones* factors. But the district court did not conduct any analysis relevant to the fourth factor, good faith.

**[4]** We have recognized that when a district court does not address good faith when conducting the *Pioneer-Briones*

analysis, it may result in an abuse of discretion. In *Laurino*, we reversed a district court's denial of Rule 60(b)(1) relief after noting that the district court did not apply the good-faith factor. 279 F.3d at 753-54. We concluded that the district court erred because, among other things, "the district court made no finding of bad faith." *Id.* at 754. Similarly, it was error for the district court here not to make a finding as to good faith, one of only four factors detailed by the Supreme Court for analysis.

Because the standard under Rule 60(b) is an equitable standard, *see Briones*, 116 F.3d at 381, it may follow that in some circumstances a district court may satisfy the standard even though omitting to discuss some specified factor. However, we conclude that it will always be a better practice for the district court to touch upon and analyze at least all four of the explicit *Pioneer-Briones* factors, namely: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman*, 231 F.3d at 1223-24 (citing *Pioneer*, 507 U.S. at 395).

**[5]** Not discussing good faith here does not seem to us to be an irrelevancy. It is difficult to even assess whether this case is close without knowing whether Caruana acted in good faith in connection with his delays and with his explanations that attributed the delays to his own injury. District courts should be advised in all cases considering a Rule 60(b) motion that it will be helpful to their analysis and important to ours on appeal if they articulate a complete analysis of all the factors that the Supreme Court has declared relevant. Doing so will make clear the basis of the district court's Rule 60(b) determination and will aid our review. *Cf. United States v. Taylor*, 487 U.S. 326, 336-37 (1988) ("Where, as here, Congress has declared that a decision will be governed by consideration of particular factors, a district court must carefully consider those factors as applied to the particular case

and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review. Only then can an appellate court ascertain whether a district court has ignored or slighted a factor that Congress has deemed pertinent . . . .").

**[6]** Morever, in the circumstances of this case, we think that the district court also erred in its analysis of prejudice by not considering the prejudice the Lemoges would suffer if they were denied relief. In *Pioneer*, the Supreme Court stated that "all relevant circumstances" must be considered. 507 U.S. at 395. We stated in *Briones* that "[t]hese four enumerated factors" are "not an exclusive list." 116 F.3d at 381. Although prejudice to the movant is not an explicit *Pioneer-Briones* factor, and is not a factor that we think should be assessed in each and every case evaluating a Rule 60(b) motion, prejudice to the movant, in a case such as that before us, is one of the "relevant circumstances" that should be considered when evaluating excusable neglect.

It is worth noting that there is always prejudice to a movant whenever an untimely complaint is rejected, as for example when that is required by a statute of limitations. In such a case, the established law reflects a balance between the needs of society for dispute resolution in a specified period and the needs of parties for justice, and lateness cannot be excused merely because the movant is prejudiced. However, unlike a statute-of-limitations standard, the standard for permissibly expanding the period for service under Rule 4(m) has embedded within it a concern for prejudice to the movant. We have in a prior decision expanded the scope of the "prejudice" inquiry when conducting analysis under Rule 4(m) to include the prejudice that would be suffered by a plaintiff in the event of a dismissal for failure to timely serve:

> The prejudice inquiry might also include consideration of what prejudice the plaintiff . . . would suffer if the case were dismissed. A dismissal for untimely

service is required to be a dismissal without prejudice . . . . It is conceivable . . . that prejudice might result from a dismissal without prejudice if, for example, the statute of limitations had expired. The existence of prejudice of this kind could affect what action a court might choose to take in response to untimely service of process.

*United States v. 2,164 Watches, More or Less, Bearing a Registered Trademark of Guess?, Inc.*, 366 F.3d 767, 772 (9th Cir. 2004). Thus, relief under Rule 4(m) "may be justified, for example, if the applicable statute of limitations would bar the re-filed action." Fed. R. Civ. P. 4, Advisory Committee Note to 1993 Amendments, Subdivision (m).

**[7]** We hold that at least where the movants' Rule 60(b)(1) motion (1) seeks to set aside a dismissal that arises from non-compliance with Rule 4(m), (2) the movants cannot re-file their action because the statute of limitations has run, and (3) there is no or only slight prejudice to the opposing party if relief is granted, the district court should consider, and give appropriate weight to, the movants' prejudice if relief is denied. Here, the district court acknowledged the Lemoges' argument that they would be prejudiced by the denial of relief because they would be barred by the statute of limitations from re-filing their action. But the district court neither considered prejudice to the Lemoges in its analysis of prejudice, nor gave it any apparent weight.

**B**

**[8]** Turning to its application of the specific *Pioneer-Briones* factors, the district court in our view erred by concluding that the Lemoges did not establish excusable neglect sufficient for relief under Rule 60(b)(1). First, the government would not be prejudiced if the Lemoges were granted relief; instead, the Lemoges would suffer the "ultimate" prejudice absent relief because the statute of limitations on their claim

has run. Second, the length of the delay was not unreasonable given the circumstances. Third, Caruana offered credible reasons for the delay. Fourth, there is no indication that Caruana or the Lemoges acted in bad faith.

As to the first factor, prejudice, the district court accepted the government's representation that absent the dismissal, the government would have approached the Granite State Action differently and would likely not have settled with Granite State. The district court erred in concluding that the government would be prejudiced on this basis if relief were granted.

**[9]** Prejudice requires greater harm than simply that relief would delay resolution of the case. *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001) ("[M]erely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default judgment."). The government offered no argument for how it would be prejudiced other than its claim that it likely would not have settled, and would have approached differently, the Granite State Action if it knew the litigation concerning the Lemoges' action would continue. The government does not indicate how it would have changed its strategy in the Granite State Action, or that a different strategy would have benefitted the government. As the government settled the Granite State Action, the government must have thought that payment of the settlement sum was a better deal for it than taking a chance litigating the dispute. The government's bare assertions do not establish prejudice, particularly in light of the nature of California workers' compensation law. Under California workers' compensation law, an employer's insurer's recovery is limited to workers' compensation benefits paid or owed. *See Engle v. Endlich*, 12 Cal. Rptr. 2d 145, 156 (Cal. Ct. App. 1992). If an employer's insurer recovers workers' compensation benefits, this sum cannot be recovered by an employee in a separate suit. *See Demkowski v. Lee*, 284 Cal. Rptr. 919, 923-925 (Cal. Ct. App. 1991). Thus, double recovery of workers' compensation benefits cannot occur if the Lemoges' action is reopened.

*Id.* The government has pointed to no tangible harm that it will suffer if the Lemoges are granted relief.

**[10]** Prejudice to the Lemoges if relief is denied is also an important consideration under these circumstances. The Lemoges' Rule 60(b)(1) motion seeks to set aside a dismissal for non-compliance with Rule 4(m)'s service requirements. The Lemoges cannot re-file their action because the statute of limitations has run. And the government will not be prejudiced if the Lemoges are granted relief. In contrast to the lack of prejudice to the government if the Lemoges are granted relief, the Lemoges will suffer substantial prejudice absent relief because they cannot re-file their action. Indeed, the Lemoges would endure the ultimate prejudice of being forever barred from pursuing their claims.

As to the second factor, the length of the delay, Federal Rule of Civil Procedure 60(c) requires that a Rule 60(b) motion be made "within a reasonable time" and "no more than a year after the entry of the judgment or order or the date of the proceeding." "What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to the other parties." *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (per curiam).

**[11]** The Lemoges' Motion was brought within a year of the dismissal and within a reasonable amount of time. The Lemoges sought relief about seven months after the case was dismissed. According to the district court, in spite of Caruana's third surgery in November, he should have been able to tend to his law practice by, at the latest, March 2008, but did not bring the Motion until May. Under the district court's view, Caruana waited at least two months after he should have been able to return to his law practice before filing the Motion. But this delay is insubstantial when viewed in light of Caruana's traumatic medical issues that still afflicted him

as of the time of the hearing. Caruana testified at the hearing that while his most recent surgery was in November 2007, the surgeries were ongoing and he was still experiencing swelling. It is understandable that, as a sole practitioner, it would take Caruana months to get back on his feet and to catch up on the status of his cases while recovering from surgery. Under the totality of the circumstances, the Lemoges brought the Motion within a reasonable time.

**[12]** As to the third factor, the reason for the delay, the district court erred in its conclusion that Caruana did not provide adequate reasons for the delay. Caruana's inability to identify the correct agency to serve may have been negligent, and seriously so, but it was nonetheless, in the circumstances here, excusable negligence if merely a good-faith mistake. Caruana's June 2007 letter to the Navy, sent before his medical problems arose, demonstrates that he was trying to ascertain how to successfully prosecute the Lemoges' FTCA claim. The district court noted that Caruana "was expressly informed by letter dated September 5, 2007 . . . [that] the proper agency for service of any civil complaint was the United States Attorney's Office" and was later notified through the district court's order to show cause that service had not been completed. But Caruana's medical problems, which the district court accepted, explain why Caruana did not review the Navy attorney's September 5, 2007, letter, why he did not respond to the district court's order to show cause, and why he did not file the Motion until seven months after the case had been dismissed. There is no question that Caruana could have handled his practice better, but under the circumstances, Caruana provided adequate reasons for the delay.

**[13]** As to the fourth factor, good faith, the district court did not discuss this factor. We conclude that "there is no evidence that [Caruana] acted with anything less than good faith. His errors resulted from negligence and carelessness, not from deviousness or willfulness." *Laurino*, 279 F.3d at 753 (quoting *Bateman*, 231 F.3d at 1225). The government argues that

even though the district court did not discuss good faith, we should infer that the district court believed that Caruana failed his clients by not diligently pursuing his cases. The government's argument is misplaced. The district court merely concluded that Caruana did not provide an adequate reason for not diligently prosecuting the Lemoges' action. *See id.* We do not infer from this that the district court found that Caruana acted in bad faith. To the contrary, the district court appeared to be sympathetic to the injured status and situation of Caruana. The district judge stated at the hearing, "I hate to sound like I am hard hearted about [granting relief], but . . . I just [don't] think [the legal standard] can be met in this case." If any inference at all can be drawn, it would be that the district court did *not* think that Caruana acted in bad faith, but felt compelled, erroneously, to deny relief on other grounds.

**[14]** In sum, we conclude that under the total circumstances, the Lemoges have demonstrated excusable neglect. We therefore reverse the district court's denial of the Rule 60(b)(1) Motion and consequent continued dismissal of the case because the complete test from *Pioneer-Briones* was not recognized by the district court and because each of the *Pioneer-Briones* factors, as we consider this appeal, weighs in favor of granting relief to the Lemoges.

## III

The district court, having concluded that the dismissal should stand, did not reach the issue of whether time should be extended to allow the Lemoges an opportunity to serve the summons and complaint. Federal Rule of Civil Procedure 4(m) governs this inquiry and provides as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.

But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Rule 4(m) provides two avenues for relief. The first is mandatory: the district court must extend time for service upon a showing of good cause. *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001).**³** The second is discretionary: if good cause is not established, the district court may extend time for service upon a showing of excusable neglect. *Id.* at 512, 514. Exercise of discretion to extend time to complete service is appropriate when, for example, a statute-of-limitations bar would operate to prevent re-filing of the action. *See Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007); *see also 2,164 Watches*, 366 F.3d at 773. The Lemoges have established excusable neglect and concede that they are time-barred from re-filing their action and would be prejudiced if they could not complete service. Therefore, we conclude that relief under Rule 4(m) is appropriate and on remand should be granted.

## IV

**[15]** The district court abused its discretion by applying the wrong legal standard. Proper application of the *Pioneer-Briones* excusable-neglect analysis under Rule 60(b)(1) requires consideration of all four factors and also requires giving proper weight to the movants' prejudice under the circumstances presented by this case. The Lemoges have demonstrated excusable neglect under *Pioneer-Briones* and the dismissal should be set aside on that basis. Furthermore, because the statute of limitations has run preventing the

---

**³**Good cause to avoid dismissal may be demonstrated by establishing, at minimum, excusable neglect. *See Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991). In addition to excusable neglect, a plaintiff may be required to show the following factors to bring the excuse to the level of good cause: "(a) the party to be served personally received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed." *Id.*

Lemoges from re-filing their action, extending time to complete service under Rule 4(m) is appropriate. On remand, the district court is instructed to grant the Lemoges' Motion and enter an order providing the Lemoges a reasonable amount of time to serve the government with the summons and complaint.

**REVERSED** and **REMANDED.**