FILED

MAR 13 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   SC-11-1472-MkHKi |
| STEVEN D. STEIN, | Bk. No.   10-03458-LA11 |
| Debtor. | Adv. No.   10-90305-LA |
| STEVEN D. STEIN, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| EL DORADO CUSTOM POOLS, | |
| Appellee. | |

Argued and Submitted on
February 24, 2012, at Pasadena, California

Filed - March 13, 2012

Appeal from the United States Bankruptcy Court
for the Southern District of California

Honorable Louise DeCarl Adler Bankruptcy Judge, Presiding

Appearances:    Jeffrey Lewis of Broedlow Lewis LLP appeared for
Appellant Steven D. Stein.  Molly T. Shields
appeared for Appellee El Dorado Custom Pools.

Before:  MARKELL, HOLLOWELL, and KIRSCHER, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

1

## INTRODUCTION

Debtor Steven D. Stein ("Stein") appeals the bankruptcy court's order denying relief from its order dismissing an adversary proceeding related to his Chapter 11[1] bankruptcy case. We REVERSE and REMAND.

## FACTS[2]

On January 12, 2008, Stein and Susan Corl[3] contracted with El Dorado Custom Pools ("El Dorado") to construct a swimming pool at their residence in El Dorado, California (the "Property"). El Dorado is the fictitious business name under which Erik and Jackie Heasley (the "Heasleys") operate a pool construction business.

Stein arranged financing for the project through Bank of America, N.A. ("BofA"). The borrowed funds were placed on deposit with First American Title ("First American"). First American was to disburse the funds upon submission of approved invoices.

The project did not go as planned. On July 11, 2008, El Dorado filed a complaint in California Superior Court for the

---

[1]Unless specified otherwise, all "Chapter" and "Section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, all "Civil Rule" references are to the Federal Rules of Civil Procedure, 1-86, and all "Evidence Rule" references are to the Federal Rules of Evidence, Rules 101-1103.

[2]The factual background of the state court litigation has been compiled from the allegations in the parties' complaints.

[3]Corl was a co-owner of the Property at the time of construction.

2

County of El Dorado.  In the complaint, El Dorado sought recovery based on breach of contract, negligence, and quantum meruit; El Dorado also sought to foreclose on a mechanic's lien it had recorded against the Property and to recover payments of amounts allegedly due and owing on Stein and Corl's open book account.

Stein and Corl cross-claimed, bringing causes of action for fraud in the inducement, slander of title, breach of contract, negligence, and breach of warranty against El Dorado.  They also sued BofA for breach of contract and breach of the covenant of good faith and fair dealing.

On March 3, 2010, Stein filed a Chapter 13 petition[4] in the United States Bankruptcy Court for the Southern District of California.  Stein then removed the California state court litigation to the United States Bankruptcy Court for the Eastern District of California.[5]  He thereafter moved to transfer the lawsuit to the United States Bankruptcy Court for the Southern District of California, where his main bankruptcy case was pending.  That motion was granted on June 23, 2010.

Once transferred, nothing happened in the adversary proceeding for almost a year.  On April 6, 2011, the bankruptcy court issued a "Notice of Intent to Dismiss Adversary Proceeding for Want of Prosecution."  In the notice, the bankruptcy court warned that it would dismiss the adversary proceeding unless

---

[4]Stein's Chapter 13 case was converted to one under Chapter 11 on October 4, 2010.

[5]According to El Dorado's counsel in the state court proceedings, the state court had already set the matter for a jury trial when Stein removed the case to bankruptcy court.

3

"Plaintiff takes action during the twenty-one day period either by filing the appropriate order or judgment or by noticing the matter for hearing."[6] Dkt. No. 5. In the removed action, the only entity denominated a "Plaintiff" was El Dorado.

At the time the bankruptcy court issued its April 6, 2011 notice, only four entries appeared on the adversary docket. The first item was the order transferring the adversary proceeding to the bankruptcy court, filed on June 29, 2010. The second was a "Notice of Filing Proceeding on Transfer from Another District," filed on June 29, 2010. The third was an "Association of Counsel," filed on July 30, 2010. The fourth and final item was a "Notice of Appearance and Demand for Notices and Papers," filed on August 4, 2010. Bures submitted these last two filings on behalf of El Dorado.

No responses were filed to the court's notice. The bankruptcy court thus dismissed the adversary proceeding and all related cross and counterclaims without prejudice for want of prosecution on June 6, 2011. At the time the bankruptcy court granted its motion, the only filing submitted by Stein in the adversary proceeding was a "Substitution of Attorney," filed on

[6]The accompanying certificate of notice shows that Matthew Clark Bures ("Bures") and Richard Seegman ("Seegman") received notice by first class mail. At the time of service, Seegman was counsel of record for Stein in the adversary proceeding. Burres was counsel of record for El Dorado but purported to represent El Dorado as a cross-defendant only. We remain perplexed as to how an attorney can only represent a party on a cross-claim (counterclaim in federal parlance) when that cross-claim appears to arise out of the same nucleus of operative facts. Our confusion, however, does not affect the disposition of this appeal.

4

April 27, 2011.

On June 23, 2011, Stein's new counsel moved for relief from the order of dismissal under Rule 9024, which incorporates Civil Rule 60(b)(1). In his brief in support of the motion, Stein argued that "the dismissal was a result of inadvertence, surprise, and excusable neglect." Stein's Mem. of Points and Authorities at 4. Specifically, Stein asserted that because he was "not the named plaintiff in the case, . . . counsel[7] mistakenly assumed that the named plaintiff, El Dorado, would follow the appropriate Bankruptcy procedures and file the requisite certificate of compliance with th[e] Court as required by local rules." Id. According to Stein, "it came as a complete surprise . . . that El Dorado took no action in response to the Court's notice of its intent to dismiss this matter." Id. Stein further contended that if El Dorado had informed Stein of its intent to abandon the litigation, he "would have taken further steps to prevent the Court's . . . order." Id. at 7. In addition, Stein maintained that "counsel acted with reasonable diligence, including contacting th[e] Court to reserve a June 30, 2011 hearing date to conduct a status conference" and contacting "all counsel for all parties in th[e] matter."[8] Id. at 4. Stein

---

[7]As noted in text, attorney Jeffrey Lewis ("Lewis") did not substitute in as Stein's counsel in the adversary proceeding until April 27, 2011.

[8]In his declaration in support of the motion for relief, Lewis declared as follows:

> 6. Upon learning that the Court was considering dismissing the merits, I took the following steps:
> (continued...)

5

also contended that no party would be prejudiced if the bankruptcy court granted the motion. The record reflects that Stein's counsel emailed information regarding a possible status conference to interested parties, but it appears that he never followed through on his promise that a "[f]ormal notice will follow this email."[9]

---

[8](...continued)

     a) I contacted the clerk and reserved a pre-trial conference for June 30, 2011. She informed me that the parties would have to file a joint pre-trial certificate of compliance in advance of the June 30, 2011 hearing.

     b) On April 28, 2011, I contacted the other parties to this litigation to attempt to meet and confer . . . . I reminded plaintiff El Dorado Custom Pools' counsel, Jennifer Wiener, of the plaintiffs' obligation to set up a pre-trial conference . . . in advance of the June 30, 2011 hearing . . . . I have not been able to locate a substitution of attorney filed by Ms. Weiner nor have I been able to find a reference to one on the Court's docket for this matter.

     c) On April 28, 2011, I received an email from plaintiff El Dorado Custom Pools' counsel, Jennifer Wiener. Ms. Wiener advised me that she was no longer counsel for plaintiff El Dorado Custom Pools. I informed Ms. Wiener that I had no record of the filing of a substitution of attorney and that the plaintiff's rights may be impaired if she or her client d[id] not take action.

Lewis' Decl. in Support of Mot. for Relief at 2-3.

[9]This email read:

Counsel,

As you may recall, I represent Mr. Stein with respect to litigation involving El Dorado Custom Pools, Bank of America, and First American Title. You are receiving this email because you were counsel of record at the time Mr. Stein removed [these cases to federal court] . . . . Please be advised that counsel has set a status conference
(continued...)

6

El Dorado opposed Stein's motion for relief, requesting that the bankruptcy court deny the relief sought because: (1) the bankruptcy court did not have authority to enter final judgment on Stein's cross-claims in light of the United States Supreme Court's decision in <u>Stern v. Marshall</u>, ___ U.S. ___, 131 S. Ct. 2594, 180 L. Ed. 2d 574 (2011); (2) Stein had the option to pursue his claims in state court; and (3) the bankruptcy court could not hold a jury trial absent the parties' consent, which, El Dorado argued, had not been given.

In his reply, Stein first reiterated his argument that the order of dismissal resulted from mistake, inadvertence, surprise, or excusable neglect.[10] He also asserted that his entitlement to relief was uncontested, as El Dorado's opposition contained no evidence or argument that Stein was not entitled to relief under any of the grounds set forth in Civil Rule 60(b)(1) and did not contain any argument or evidence demonstrating prejudice to any

[9](...continued)
in this matter for June 30, 2011, 2:00 p.m. Formal notice will follow this email. In advance of that conference we are required to meet and confer regarding our readiness for trial . . . .

By this email, I am requesting that plaintiffs' counsel arrange and set up the conference. If you are no longer counsel of record, please send me a copy of the substitution of attorney filed with the United States Bankruptcy Court so that I may remove you from this list.

Email from Lewis (April 28, 2011). The email was not addressed to Bures, who represented El Dorado as cross-defendants in the adversary proceeding as of July 30, 2010.

[10]This varied slightly from the argument offered in the brief in support of the motion, which Stein based on "inadvertence, surprise, and excusable neglect."

7

party in the event the bankruptcy court granted Stein's motion.

In addition, Stein argued that the Stern decision did not preclude the bankruptcy court from granting relief under Civil Rule 60(b)(1) because even if the bankruptcy court lacked the authority to enter final judgment, it could still submit proposed findings of fact and conclusions of law to the district court. Alternatively, Stein maintained that Stern was inapplicable. As to El Dorado's argument that it did not consent to a jury trial in bankruptcy court, Stein contended that El Dorado had previously waived its jury trial right.[11]

The hearing on the motion was scheduled for July 28, 2011. Prior to the hearing, the bankruptcy court issued its tentative ruling:

> First, movant fails to satisfy [the] standard of 'mistake, inadvertence or surprise'. The failure of debtor/movant or plaintiff to do anything for 12 months is hardly a surprise; it is certainly not excusable or inadvertent. The failure of plaintiff to respond to debtor's request to meet and confer does not excuse debtor's failure to notice a pretrial status conference for its cross-complaint and file a certificate of compliance re: early meeting of counsel as required by LBR 7016-2(a)-(c) and 7016-3.
>
> Second, if the action is still pending in state court, [the] Court agrees with opposition [sic] that this court lacks Constitutional authority to enter a final judgment on the counterclaims since the recent USSC decision in Stern v. Marshall [2011 WL 247292 (June 23, 2011)] squarely applies to these counterclaims. We cannot conduct a jury trial without consent which the plaintiff refuses to give and since the state court can conduct a jury trial and, at least when this case was initially filed, was on the eve of doing so, judicial economy would be better served by that

---

[11]Stein did not cite to Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993), or Briones v. Riviera Hotel & Casino, 116 F.3d 379, 381 (9th Cir. 1996) (per curiam), in the papers he submitted in support of the motion for relief. He similarly did not identify those cases during the hearing on the motion.

8

court adjudicating this action. Dkt. No. 15.

At the hearing, Stein argued that if the bankruptcy court remanded the case to state court, there could be a delay in getting the case ready for trial. According to Stein, such delay could be anticipated in light of the "pleadings battle" that was raging at the time the case was removed to federal court and the fact that it appeared as though El Dorado and the Heasleys had obtained replacement counsel. Tr. of July 28, 2001 Hr'g at 3-4.

Stein also argued that he had acted in good faith, pursuing negotiations and possible resolution with BofA, up until, as Stein represented, BofA "all of a sudden withdrew its consent to participate in the mediation . . . ." Id. at 4. These dealings with BofA, according to Stein, were also another reason for his "delay in getting to the El Dorado argument." Id. at 5.

In response, El Dorado maintained that none of Stein's arguments "address[ed] the standard of inadvertent excusable neglect" and that nothing Stein presented "would give him the right for this Court to reverse its order dismissing th[e] case." Id.

Stein's reply to these arguments was as follows:

> With respect to the Stern case that affects this Court's ability to render a jury trial and enter judgment, I believe the rules still allow, notwithstanding that decision, this Court to refer this matter to the district court, either here in the southern district or up in the central district, for a jury trial.
>
> On the issue of inadvertence and the standard, I believe the Court has to find that one or more of the parties would be prejudiced and that we acted in bad faith and that the delay in prosecuting the case would slow down the proceedings of this bankruptcy, and I don't believe any of those findings can be sustained.

9

*Id.* at 6.

Without addressing the factors Stein mentioned, the bankruptcy court adopted its tentative ruling at the conclusion of the hearing. *Id.* It reasoned:

> [T]o get relief from a dismissal, you have to satisfy the standard of mistake, inadvertence, or surprise; and as the Court's tentative observed, the failure of anything to come to the attention of the Court for 12 months is hardly a surprise, and it certainly does not appear to be excusable or inadvertent.
>
> The plaintiff had to respond to the request to meet and confer, but the debtor could have noticed a pretrial conference on its cross-complaint and had the burden of doing so, and doing that which was required under LBR 1716-2(a) through (c) and 1716-3.

*Id.* at 6-7.[12]

The bankruptcy court entered the order denying relief from its order dismissing the adversary proceeding on September 6, 2011. Stein timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(c)(1). The Panel has jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court abuse its discretion when it denied Stein's motion for relief from the order of dismissal?

**STANDARD OF REVIEW**

We review a bankruptcy court's decision to deny a motion

---

[12]As to the *Stern* issue, the bankruptcy court determined that "it would be far better to leave [the litigation] in the state court and let it complete there." Tr. of July 28, 2011 Hr'g at 7.

under Civil Rule 60(b) for abuse of discretion. Lemoge v. United States, 587 F.3d 1188, 1191-92 (9th Cir. 2009); Alonso v. Summerville (In re Summerville), 361 B.R. 133, 139 (9th Cir. BAP 2007) (citing Hammer v. Drago (In re Hammer), 112 B.R. 341, 345 (9th Cir. BAP 1990), aff'd, 940 F.2d 524 (9th Cir. 1991)).

The abuse of discretion standard has two prongs: "first, whether the court applied the correct legal standard; and second, whether the factual findings supporting the legal analysis were clearly erroneous." Veal v. Am. Home Mortg. Servicing (In re Veal), 450 B.R. 897, 915 (9th Cir. BAP 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1261-63 (9th Cir. 2009) (en banc)). Where a bankruptcy court has failed to apply the correct legal standard, "it has 'necessarily abuse[d] its discretion.'" Id. (quoting Hinkson, 585 F.3d at 1261-63) (modifications in original). We review this prong of the analysis de novo. Id. Where a bankruptcy court has applied the correct legal standard, "the inquiry then moves to whether the factual findings made were clearly erroneous." Id. (citing Hinkson, 585 F.3d at 1262). See also Rule 8013. A bankruptcy court's findings of fact are clearly erroneous if they are "'illogical, implausible, or without support in inferences that may be drawn from the record.'" Id. (quoting Hinkson, 585 F.3d at 1263).

**DISCUSSION**

**I.  The bankruptcy court did not apply the correct legal standard.**

**A.  Civil Rule 60(b) and the Pioneer-Briones test.**

Civil Rule 60(b) applies to bankruptcy proceedings. Rule 9024 ("Rule 60 F.R.Civ.P applies in cases under the

11

Code . . . ."). Under Civil Rule 60(b)(1), the bankruptcy court may grant relief from a final judgment, order, or proceeding for "mistake, inadvertence, surprise, <u>or excusable neglect</u>." Civil Rule 60(b)(1)(emphasis supplied).

To determine whether a party's neglect is excusable, the court must consider: "[(1)] the danger of prejudice to the [opposing party], [(2)] the length of the delay and its potential impact on judicial proceedings, [(3)] the reason for the delay, including whether it was within the reasonable control of the movant, and [(4)] whether the movant acted in good faith." <u>Pioneer</u>, 507 U.S. at 395.

These four factors, however, are "not an exclusive list." <u>Lemoge</u>, 587 F.3d at 1195 (citing <u>Briones</u>, 116 F.3d at 381).[13] "The determination as to what sorts of neglect will be considered 'excusable' is at bottom an equitable one." <u>Pioneer</u>, 507 U.S. at 395. <u>See</u> <u>also</u> <u>Bateman</u>, 231 F.3d at 1224 ("We would not ordinarily reverse a court simply for failing to articulate the <u>Pioneer</u> and <u>Briones</u> test, as long as it actually engagedin [<u>sic</u>] the equitable analysis those cases mandate."). In making that determination, the court must also consider "all relevant circumstances." <u>Id.</u>; <u>Lemoge</u>, 587 F.3d at 1195. Where "prejudice to the movant . . . is one of the relevant circumstances[,] that should be considered when evaluating excusable neglect." <u>Lemoge</u>,

_____

[13]After its decision in <u>Briones</u>, 116 F.3d at 381 (holding that the equitable test set out in <u>Pioneer</u> applies to Civil Rule 60(b)), the Ninth Circuit refers to this framework as the <u>Pioneer-Briones</u> test. <u>See,</u> <u>e.g.</u>, <u>Lemoge</u>, 587 F.3d 1188; <u>Bateman v. U.S. Postal Service</u>, 231 F.3d 1220 (9th Cir. 2000). We use that same appellation here.

12

587 F.3d at 1195.

Moreover, the Ninth Circuit has expressly noted that a party's failure to either (a) cite Pioneer or Briones or (b) to discuss any of the factors under the equitable test "d[oes] not relieve the court of the duty to apply the correct legal standard."  Bateman, 231 F.3d at 1224 (citation omitted).

**B.    The bankruptcy court erred when it did not consider all of the Pioneer-Briones factors, including the risk of any prejudice to Stein.**

On appeal, Stein argues, among other things, that the bankruptcy court abused its discretion because it did not weigh all of the Pioneer factors.  We agree.

First, the bankruptcy court's tentative ruling fails to mention excusable neglect as a separate grounds for granting relief.  The tentative ruling seems to address whether any alleged "mistake, inadvertence, or surprise" was excusable, but it contains no language to suggest that term "excusable" was used in reference to any alleged neglect.  Second, the order from which this appeal arises provides no additional clarification. It merely documents the bankruptcy court's adoption of its tentative ruling.

Even if we were, however, to assume that the bankruptcy court's tentative ruling and its subsequent order properly referred to excusable neglect, the remainder of the record shows that the bankruptcy court did not consider whether its order of dismissal, though without prejudice as a procedural matter, would

13

present a risk of any actual prejudice to Stein.[14]  In particular, the record reflects that the bankruptcy court did not consider the effect its order would have on Stein's ability to litigate his claims in state court.

We acknowledge that Stein did not specifically refer to Pioneer or to Briones in the papers he submitted in support of the motion for relief; nor did he mention the cases during the hearing on the motion.  In this case, however, Stein's failure to cite the relevant authorities did not relieve the bankruptcy court of its duty to apply the correct legal standard.  See Bateman, 231 F.3d at 1224.

Moreover, at the hearing, Stein did mention a number of the factors courts are to consider when deciding a motion under Civil Rule 60(b)(1):

> On the issue of inadvertence and the standard, I believe the Court has to find that one or more of the parties would be prejudiced and that we acted in bad faith and that the delay in prosecuting the case would slow down the proceedings of this bankruptcy, and I don't believe any of those findings can be sustained.

Tr. of July 28, 2011 Hr'g at 6.

Without addressing these factors, however, the bankruptcy court adopted its tentative ruling at the conclusion of the hearing, adding only that:

> I think [El Dorado] is correct that, to get to relief from a dismissal, you have to satisfy the standard of mistake, inadvertence or surprise; and as the Court's tentative observed, the failure of anything to come to the attention of the Court for 12 months is hardly a surprise, and it certainly does not appear to be excusable or

---

[14]From the record, it appears the bankruptcy court did not consider this factor, as well as the remainder of the Pioneer-Briones factors.

14

inadvertent . . . .

[T]he debtor could have noticed a pretrial conference on its cross-complaint and had the burden of doing so, and doing that which was required under LBR 1716-2(a) through (c) and 1716-3.

Id. at 6-7.

As set forth above, when deciding whether relief is appropriate under Civil Rule 60(b)(1) on the grounds of excusable neglect, the Pioneer-Briones test requires that the bankruptcy court consider all four factors. See Bateman, 231 F.3d at 1224 ("The court would have been within its discretion if it spelled out the equitable test and then concluded that [the moving party] had failed to present any evidence relevant to [those] factors."). Under the circumstances of this case, the Pioneer-Briones test also requires that the bankruptcy court consider any prejudice to the movant. See Lemoge, 587 F.3d at 1195.

While Stein's counsel may have been negligent or careless, "[t]hat . . . represents the beginning of [the] inquiry as to whether the negligence is excusable, not the end of it." See Pincay v. Andrews, 389 F.3d 853, 858-59 (9th Cir. 2004) (en banc) (district court did not abuse its discretion by granting, on the grounds of excusable neglect, an extension to file a notice of appeal where counsel had delegated the task to a paralegal who had misread Fed. R. App. P. 4(a)). See also Pioneer, 507 U.S. at 394 ("Thus, at least for the purposes of [Civil] Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence."); Bateman, 231 F.3d at 1225 (reversing and remanding to the district court with instructions

15

to grant relief under Civil Rule 60(b)(1) even though counsel, who was aware of an upcoming summary judgment motion, left the country without filing a response or seeking an extension of the filing deadline).

Here, the procedural posture of the adversary proceeding makes the inquiry as to the risk of prejudice to the movant, which the bankruptcy court did not conduct, all the more crucial. Based on the record, it appears that the bankruptcy court's ruling was premised on the availability of the state court as an alternate and more appropriate forum for the litigation. Absent from the record, however, are any indicia that the bankruptcy court considered whether the removal of the state court litigation to bankruptcy court had effectively undermined that premise. Simply put, nothing in the record suggests that the bankruptcy court assessed whether Stein could litigate his claims in state court without an order of remand from the bankruptcy court. See Rule 9027(c) ("Promptly after filing the notice of removal, the party filing the notice shall file a copy of it with the clerk of the court from which the claim or cause of action is removed. . . . The parties shall proceed no further in that court unless and until the claim or cause of action is remanded.").

Accordingly, we conclude that the bankruptcy court did not conduct the equitable analysis Pioneer and Briones require. We therefore agree with Stein insofar as he challenges whether the bankruptcy court applied the correct legal standard.

**CONCLUSION**

For the reasons set forth above, we REVERSE the bankruptcy

16

court's order denying relief from its order dismissing the adversary proceeding and REMAND this matter to the bankruptcy court.[15] On remand from this panel, the bankruptcy court may consider whether remand to the California Superior Court is appropriate under the circumstances.

[15]Because we reverse with respect to the bankruptcy court's application of the Pioneer-Briones test, we need not address the portion of its order that suggests Stern renders Stein's claims ineligible for final adjudication by the bankruptcy court.

To the extent the parties dispute the issue of costs on appeal, costs shall be allowed as provided for in Rule 8014.

17