NOT FOR PUBLICATION
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

MAY 9 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MORAYON SIMMONS,

        Plaintiff-Appellant,

  v.

CITY OF LOS ANGELES, a municipal entity; LOS ANGELES POLICE DEPARTMENT, a municipal entity; JONATHAN KINCAID,

        Defendants-Appellees,

 and

COUNTY OF LOS ANGELES; DOES, 1 through 100, inclusive,

        Defendants.

No.   21-56272

D.C. No.
2:20-cv-10779-RGK-E

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted April 14, 2023
Pasadena, California

Before:  W. FLETCHER, BERZON, and LEE, Circuit Judges.

---

     *    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

After spending nearly three years in custody, Morayon Simmons was acquitted by a jury of attempted murder and other related crimes. He subsequently filed this § 1983 suit against the Los Angeles Police Department ("LAPD"), the City of Los Angeles, the County of Los Angeles, and LAPD officer Jonathan Kincaid, based on Kincaid's alleged failure to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). LAPD was the only defendant timely served. Simmons appeals the district court's grant of summary judgment in favor of LAPD and its denial of leave to serve Kincaid well after the 90-day period for service had passed, *see* Fed. R. Civ. P. 4(m); 28 U.S.C. § 1448. Reviewing the district court's grant of summary judgment de novo, *Blankenhorn v. City of Orange*, 485 F.3d 463, 470 (9th Cir. 2007), and the district court's decision regarding an extension of time for service for abuse of discretion, *Efaw v. Williams*, 473 F.3d 1038, 1040 (9th Cir. 2007), we affirm.

1. A local government entity cannot be held liable under § 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To establish a *Monell* claim, a plaintiff must demonstrate that he has suffered a constitutional injury, *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994), and that "the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation," *Vanegas v. City of Pasadena*, 46 F.4th 1159,

2

1167 (9th Cir. 2022) (citation omitted). Simmons asserted two *Monell* claims against LAPD: first, for its alleged failure to implement adequate policies, customs, and practices, and second, for its alleged failure to train officers regarding their *Brady* obligations.

We assume for purposes of this memorandum disposition that *Brady* applies to the pre-trial period, *but see Tatum v. Moody*, 768 F.3d 806, 816 (9th Cir. 2014), and applies although Simmons was acquitted rather than convicted, *see Smith v. Almada*, 640 F.3d 931, 940–41 (9th Cir. 2011) (Gould, J., concurring); *id.* at 941 (Gwin, J., specially concurring). So assuming, Simmons's claims fail as an initial matter because he has not raised a triable issue of fact to support his underlying *Brady* claim.[1]

Simmons asserts that Kincaid suppressed evidence obtained from two witnesses that could have impeached the alleged victims' testimony. The arrest report in the underlying criminal proceeding states that the alleged victims told LAPD officers that the confrontation with Simmons began after Simmons's girlfriend accused them of stealing her wallet, which they denied to her. According to reports by Simmons's private investigator, the witnesses told the private

---

[1] In his reply brief and at oral argument, Simmons argued that he also brought a malicious prosecution claim under § 1983. However, the complaint did not so allege. The complaint did allege a stand-alone state-law malicious prosecution claim, which the parties stipulated to dismiss in district court.

investigator that they saw the alleged victims steal the wallet and that they spoke with Kincaid, who told one of the witnesses "not to mention to anyone" that Kincaid had spoken with him.

The witnesses' statements may have been impeaching of aspects of the alleged victims' testimony. But Simmons points to nothing in the record demonstrating that this impeachment evidence was "material" for *Brady* purposes.[2] *See Strickler v. Greene*, 527 U.S. 263, 280 (1999). The record does not demonstrate the extent to which the wallet theft undermined the credibility of any testimony the victims may have given about the shooting at issue in the criminal proceedings, nor how the wallet theft would have provided a defense to the shooting.

Moreover, Simmons learned of one witness just six days after he was arrested and of the other three months later; one of the witnesses testified at trial for Simmons. Simmons thus has not demonstrated that prejudice ensued as a result of Kincaid's alleged pre-trial suppression of evidence even though Simmons had obtained the evidence. *See Strickler*, 527 U.S. at 281–82.

Even if Simmons had established a viable underlying *Brady* violation, his

---

[2] The bulk of the criminal trial record is not in the record in this case—neither the victims' testimony at the preliminary hearing where the trial court determined that probable cause supported the charges against Simmons, nor the victims' testimony at trial.

*Monell* claims still fail. "When, as here, a plaintiff pursues liability based on a failure to act," he must establish that "the municipality exhibited deliberate indifference to the violation of her federally protected rights" by pointing "to a pattern of prior, similar violations of federally protected rights, of which the relevant policymakers had actual or constructive notice." *Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1141–42 (9th Cir. 2020). Alternatively, "in a narrow range of circumstances," *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997), "it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

Simmons points to no evidence that any LAPD officer other than Kincaid has previously committed a *Brady* violation, nor to any evidence that Kincaid himself has committed a *Brady* violation outside of this matter. Nor are the "unconstitutional consequences" of LAPD's *Brady* policy "so patently obvious" that LAPD "could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick v. Thompson*, 563 U.S. 51, 63–64 (2011). It is undisputed that LAPD officers are provided general training on their *Brady* obligations. And the *Tennison* Memorandum clarifies officers' obligations affirmatively to bring

5

exculpatory material to the attention of prosecutors. Whether or not the LAPD training included specific guidance about what constitutes exculpatory evidence, any defect in "the nuance of the allegedly necessary training" is in no way similar to the Supreme Court's hypothetical example of the extreme circumstances that might constitute "deliberate indifference" in the absence of any pattern of unconstitutional behavior. *See id.* at 63–64, 67 (suggesting that a city that "deploys . . . armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force" might be held responsible for the failure to train its law enforcement officers). The district court did not err when it granted summary judgment in favor of LAPD.

2. Simmons also appeals the district court's denial of his *ex parte* application requesting an extension of time to serve Kincaid, filed seven months after the deadline to serve defendants. Under Federal Rule of Civil Procedure 4(m), if a defendant is not timely served, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." But "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* Even if good cause is not established, "the district court may extend time for service upon a showing of excusable neglect." *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009); *see* Fed. R. Civ. P. 6(b).

Simmons has not established either good cause or excusable neglect for his failure to timely serve Kincaid. Although one of Simmons's counsel declared that he had been suffering from "very concerning" health issues during the service period, according to the documentation in the record, that lawyer did timely serve the LAPD and became severely ill very shortly before the end of the 90-day service period; he was practicing for at least some of the time during the seven months between the onset of his illness and the filing of the application; and there were two attorneys of record in this case, not one. Simmons's counsel offer no persuasive explanation to excuse *both* lawyers' failure to comply with the time requirement of Rule 4(m) and their subsequent failure for seven months to request an extension of the service period. *See Dela Rosa v. Scottsdale Mem'l Health Sys., Inc.*, 136 F.3d 1241, 1244 (9th Cir. 1998). Given these circumstances, the district court did not abuse its discretion in denying the application.

**AFFIRMED.**